THE FIRE DEPARTMENT OF THE CITY OF NEW YORK *v.* JOHN
S. NOBLE, DAVID A. BOKEE and WILLIAM S. SUTPHEN. (*a*)

The act of the legislature of the state of New York, passed February 21, 1837,
requiring the agent, in the city of New York, of any individual or association,

---

(*a*) The decision of this court in the case of *The Fire Department* v. *Wright*, reported at page 453 of this volume, involving the same constitutional question as was here first determined in the present case, has been unanimously affirmed in the Court of Appeals. It is understood, however, that the question may be carried by the insurance companies, or their agents, to the Supreme Court of the United States. In the present action, against Noble and others, the defendants paid the amount involved in the litigation, without appealing from the decision of this court at general term.—REP.

not incorporated by the laws of this state, although incorporated by any other state or country, to pay an annual tax, into the state treasury, as a condition to the right of effecting insurances against losses by fire; and the acts subsequently passed, requiring under a penalty such payment to be made to the treasurer of the Fire Department, for the use and benefit thereof, are constitutional. (See Session Laws of 1837, chap. 30, p. 21; 1849, chap. 178, p. 239; 1857, chap. 548, vol. 2, p. 171; 1 R. S. marg. p. 714.)

These statutes do not contravene the section of the constitution of the United States, which provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the United States. (U. S. Cons. Art. IV. § 2, subd. 1.)

Nor the provisions of the United States and state constitutions, forbidding the taking of private property for public use, without just compensation. (Amendts. to U. S. Cons. Art. V.; Cons. of N. Y. Art. I. § 6.)

It is competent for the legislature to regulate the business of insurance within this state—to designate who may effect insurances—to prohibit agencies therefor—and to impose the payment of a tax as a condition to the establishment of such agencies.

A tax upon a particular business may be levied for the benefit of a public charity, and may be made payable directly to the persons having the direction thereof.

The Fire Department of the City of New York is the representative of a public charity.

This case and that instituted by the same plaintiffs against James Wright and others, reported at p. 453 of this volume, were litigated by the defendants to test the constitutionality of certain statutes respecting insurances upon property within this state.

An act, passed February 21, 1837 (Session Laws of 1837, chap. 30, p. 21, 1 R. S. marg. p. 714), provided, that there should be paid into the state treasury, on the first of February in each year, by every person who should act as agent for any individuals or associations of individuals, not incorporated or authorized by the laws of this state to effect insurances against losses by fire or against marine losses and risks, although such individuals might be incorporated for that purpose by any other place or country, two dollars upon the hundred dollars, and at that rate, upon the amount of all premiums, which during the year ending on the preceding first of September, should have been received by such agent, or by any person for him, or should have been agreed to be paid, for any insurance

effected or agreed to be procured by such agent, against loss or injury by fire or against marine losses or risks.

The statute of 1837, above cited, was in amendment and consolidation of the act of 1824, relating to insurances against loss by fire, and of the act of 1829, concerning marine insurance. (Laws of 1824, chap. 277, p. 340, and of 1829, chap. 336, p. 515; R. S. part 1, chap. 20, title 21, vol. 1, marg. p. 714. And see 2 R. S. 4th ed. p. 120.) The act of 1837 reduced the rate of payment from ten to two per cent.

These laws expressly prohibited such agent from effecting insurances within this state, until he should have delivered, to the comptroller of the state, a bond executed to the people in the penal sum of $1,000, with sureties approved by the comptroller, conditioned to account to the comptroller, annually, on the first of February, for all premiums received or agreed to be paid, during the year ending on the first of September preceding, for any insurance effected or agreed to be procured by him, and conditioned, also, for the payment into the treasury of the sum required. A penalty of $500 for the use of the poor of any county where such agent should act, was laid upon any person effecting or agreeing to effect insurance without executing the bond above mentioned.

By an act passed March 30, 1849 (Session Laws of 1849, chap. 178, p. 239, 2 R. S. 4th ed. p. 120), the payment of the two per cent. was required to be made to the treasurer of the Fire Department, of the city of New York, where the insurances in question should be effected or agreed to be procured, by such agent, as agent or otherwise, against losses by fire only, in that city or county. The statutes of 1824, 1829, and 1837, before mentioned, so far as they related to fire insurance, were repealed and superseded by this act of 1849.

The second section made provision for a bond in all respects similar to that already described; except that the execution thereof was required to be made to the Fire Department, and the bond delivered to the treasurer thereof, with sureties approved by such treasurer, and the accounting therein provided for was to be under oath.

The third section fixed the penalty for failing to execute the bond, at $1,000, to be recovered in the name of the department.

By the fourth section, the agent, under a penalty of $1,000, to be collected in the name of the people for the use of the department, was required, within ten days after the first of February, and as often as he should change his place of business, to report in writing to the comptroller of the state and also to the treasurer of the Fire Department, the street and number of his place of business as such agent or otherwise, designating the names of the individuals or associations represented by him.

The fifth section made the act applicable to cities and villages other than the city of New York, with some modifications relative to the respective penalties.

By an act passed April 16, 1857, after the decision of the Court of Common Pleas in this case (Session Laws of 1857, vol. 2, p. 171), the statute of 1849 is revised and reënacted, with provisions for greater efficiency in its enforcement. The treasurer of the department is authorized, not oftener than once in each year, to require the renewal of the bond or undertaking given by the agent, whenever, by reason of the failure of the sureties, or either of them or other cause, the security may be deemed by him sufficient to ensure a rendition of the account or the payment of the duty. The treasurer is empowered, by written or printed demand, to require from such agent or person the account and the payment of duty. If the account be not rendered, or the duty remain unpaid for ten days after such demand, a forfeit of $50 is imposed, with a continuing penalty of $25 for each additional day of default.

Where such agent or person is not a resident of this state or is about to remove therefrom, provision is made for his arrest and bail, in an action against him for any penalty incurred, or any duty or sum of money payable under the act. Corporations and associations created or organized under the laws of any country, other than the states of the American Union, having assets, funds or capital not less than $300,000, invested in

this state, are required to pay thereon the ordinary taxes levied yearly by law, payable as follows: an amount equal to two per cent. upon the gross premiums received in their behalf for insurances, to be paid to the treasurer of the Fire Department, and the residue to the city authorities as in the case of ordinary taxation.

All pending actions or prosecutions under former statutes are exempted from the operation of the repealing clause contained in the act of 1857.

The form in which the statutes referred to stood in force when the decisions in this cause and in that of these plaintiffs against Wright were made, will appear by referring to 2 R. S. 4th ed. p. 120, §§ 3 to 13.

The provisions of the several laws in question have been thus referred to at length, in view of the importance of the principles involved, and the interest which has been drawn to the subject in this and other states.

The complaint in the present action was filed by the Fire Department of the city of New York, as a body corporate, and alleged the execution and delivery, by the defendants, of a bond, in the penalty of $1,000, which bond recited the act of 1849, relating to insurances, and was conditioned that the defendant Noble should annually render to the treasurer of the plaintiffs, on the first of February, a true account, verified by his oath, of all premiums which, during the year ending on the first of September preceding the accounting, should have been received by him, or by any person for him, or agreed to be paid, for any insurance against loss by fire in the city of New York, effected or promised from any individual or association not incorporated by the laws of this state, and should annually pay to the treasurer of the plaintiffs, on the first of February, two dollars upon every hundred, and at that rate, upon the amount of such premiums.

The complaint further averred, that the defendant Noble, at the time of the execution of the bond, was, and continued, the agent, in this city, of "The Insurance Company of the State of Pennsylvania," incorporated by that state, but not by the

state of New York.   That down to September, 1850, he had received many thousands of dollars in premiums for insurances against loss by fire upon property in this city, effected or promised by him from that company.   That the account which should have been rendered on the first of February, 1851, had not been obtained, and that the defendant had neglected to make any payment to the treasurer of a per centage upon the premiums in question.   That the sum of the per centage due by the defendant was unknown to the plaintiff, but the complaint charged that the sum amounted to $1,000.   That by reason of the breaches averred, the plaintiff had suffered large damages. The prayer was for judgment for the penalty of the bond besides damages in the sum of one thousand dollars.

The   defendants   joined   in a demurrer specifying as the grounds of objection that the complaint did not state facts sufficient to constitute a cause of action ; that the act of the legislature of the state of New York, entitled, " An act further to amend the acts in relation to insurances on property in this state, made by individuals and associations unauthorized by law," passed March 30th, 1849, under and in pursuance of which the bond or writing obligatory in the said complaint mentioned, was given, is in violation of the constitution of the United States, and the constitution of the state of New York, and is unconstitutional and void, and that the said bond is also void and of no effect.

The issue of law formed by the demurrer, was argued at a special term, by the late Abraham Crist, for the defendants, the same counsel appearing for the plaintiffs as at the subsequent hearing before the general term.   The court, WOODRUFF, J., presiding, overruled the demurrer and directed judgment for the plaintiffs thereon, with leave to the defendants to withdraw it and to answer, within twenty days, upon payment of costs.

The defendants having failed to withdraw the demurrer and to answer, a reference was ordered to HON. CHARLES A. PEABODY, to ascertain by the examination, under oath, of the defendants or their agents, or servants, or otherwise, the amount of premiums received or agreed to be paid as in the complaint alleged.

At the reference, a sworn statement of the defendant Noble was introduced by consent, from which it appeared that the premiums received for the year ending September 1, 1850, amounted to $18,513 30. For two per cent. upon that sum, with interest from February 1, 1851, and costs of suit, amounting in all to $554 58, the court at special term gave judgment. From this judgment the defendant now appealed to the general term. (*a*)

*Lewis Hurst* and *James J. Ring*, for the defendants, made and argued the following points:

I. The act of 1849 is void and of no effect; because, 1, It conflicts with the 4th art. § 2, of the constitution of the United States; 2, It discriminates in reference to a business, lawful in itself, between citizens of this state and citizens of other states; 3, Foreign corporations are citizens within the meaning of the constitution; 4, It discriminates between the citizens of this state pursuing the same business, although some act for themselves and some as agents for others.

II. The act of 1849 is void and of no effect; because, 1, It is the exercise of the right of eminent domain. It is a tax, and is objectionable because it is applied to private purposes and not to public use; 2, The Fire Department is a private corporation, and its private charities cannot be regarded as a public use, such as is contemplated in the constitution; 3, It is the duty of the court to adjudge a statute void which palpably infringes the right of a citizen, not for public use but for private purposes; (*Varick* v. *Smith*, 5 Paige, 159); 4, It is not a tax upon capital, but upon profits. 5, It is a tax upon the agent, not the company.

*Augustus F. Smith*, for the plaintiffs, made and argued the following points:

---

(*a*) The reader is referred to the points of counsel, and the opinions of jurists, printed in the report of the case of *The Fire Department* v. *Wright, post*, p. 453.

The statute under which the bond in suit was given is said to be unconstitutional. 1. Because it takes "private property for public use, without just compensation." (Art. I. §. 6, Constitution of N. Y.; Art. V. Amend. to Constitution of U. S.) 2. Because it contravenes the section of the Constitution of the United States that provides that "the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states." (Art. IV. § 2, subd. 1, of Constitution of U. S.)

I. The act in question is not referrible to the power to take private property upon making compensation, but belongs to the taxing power of the government—a power without which a government could not exist—and which belongs equally to the several states and the United States, except that the states can impose no duties on imports nor exports. This power (of taking private property) is exercised when land is taken for a street; in other words, when property is taken by right of eminent domain. (2 Story on the Constitution, 410; *Gibbons* v. *Ogden*, 9 Whea. R. 1, 199 to 202.)

II. The power of taxation is almost unrestrained. The legislature may discriminate as to the subject, the class, the district. (*Hylton* v. *The United States*, 3 Dall. 171; *Biddle* v. *The Commonwealth*, 13 Serg. & R. 405; *Nathan* v. *The State of Louisiana*, 8 How. 73; 1 Kent, 439, note *a*; *Dobbins* v. *The Commissioners of Erie County*, 16 Peters, 447; *Providence Bank* v. *Billings*, 4 ib. 514.) The power of apportionment is unlimited. (*The People* v. *The Mayor of Brooklyn*, 4 Com. 420, 426, 427.) On principle, the legislature may tax all corporations, or any particular class of corporations, or they may tax all unincorporated associations, or a particular class of such associations, as those who insure against fire. Or they may tax all those incorporated in this state, or those not incorporated in this state.

III. But, assuming that the legislature might impose a tax upon insurers against fire, not incorporated by the laws of the state, it may still be objected that they could not do so directing the tax to be paid to the Fire Department. 1. A tax is

defined to be a burden, charge, or imposition, put or set upon persons or property for public uses. (*Matter of the Mayor, etc., of New York*, 11 J. R. 77, 80; 2 Coke's Inst. 532; *Brewster* v. *Kidgell*, Carth. R. 438.) A tax may be raised to support schools, hospitals, asylums, or any charity. All these are public uses. These taxes are and may be raised by a law which specifies the object to which they are to be appropriated. (*Thomas* v. *Leland*, 24 Wend. 65.) Can there be any objection to going a step further, and making the institution for which the tax is raised the collector of the tax? 2. This is a very usual way to direct the payment or collection of a tax. (See 1 R. S. 445, § 7.) The passenger act provides that the health commissioner shall demand, etc., the sums mentioned. No objection was ever made to this act on this ground. (*Smith* v. *Turner*, 7 How. 283; 1 R. S. 678, § 4; also, p. 683, § 31; excise to be paid to county treasurer, Laws of 1839, p. 11.) The tolls paid on turnpikes, or to toll bridges, are but "delegated taxes." It would be the same in legal effect, if, in place of a toll, the law authorized a direct tax to pay for the road or bridge, and made the road or bridge company the collector. (4 Com. 431.) Very few taxes are paid to the state treasury. They are collected and paid to town officers, and to sundry officers in cities, and disbursed by them. (See 1 R. S. 453, § 13, 3d ed.) 3. The Fire Department is a public charity, established for the benefit of indigent and disabled firemen and their families. (See the act passed March 20, 1798.) 4. The legislature could not have selected a more appropriate source from which to draw this tax for the benefit of the disabled firemen of New York than the fire insurance companies.

IV. The act in question imposes no burden upon the citizens of other states that it does not impose upon our own. The act lays a tax upon every insurer—upon every agent, not upon an individual insurer—who does business in New York, whether a citizen of New York or not, unless incorporated by the laws of New York. This act is as much applicable to citizens of this state as of any other. If every stockholder of a Georgia company lived here, still the company would come within the

act. (*Frost* v. *Brisbin*, 19 Wend. 11, 15; *Livingston* v. *Van Ingen*, 9 J. R. 577.)

V. A corporation is not a " citizen " entitled to the immunities and privileges of citizens of the states. (1 Bouvier Law Dic. 249, 250.) It has no legal existence out of the boundaries of the sovereignty creating it. (*Bank of Augusta* v. *Earle*, 13 Peters, 521.) It cannot sue in another state except by comity or by express statute. (2 R. S. 457, § 1.)

VI. The legislature has always exercised the power of prohibiting foreign corporations from transacting business in this state, and no doubt such laws are valid. (See Restraining Act, 1 R. S. 894, § 6 . *DeGroot* v. *Van Duser*, 20 Wend. 390.) If this were not so, the sister states could deluge us with banks, insurance companies, and other corporations, without the power on our part to control them. We could not have a bank without admitting all foreign banks, and the same with other corporations.

VII. Doubtless the legislature may prohibit foreign corporations; and, if they may prohibit them, they may admit them under restrictions. They may say to them, If you do business here, you shall deposit with the comptroller securities, as has been done with foreign life insurance companies; or, you shall pay a tax to the state; or, as in this case, to a charity—to the Fire Department. They may prohibit agents or any other class, or permit them under a license.

VIII. The presumption must always be in favor of the validity of a law, until the contrary is clearly demonstrated. (*Fletcher* v. *Peck*, 6 Cranch, 87; *Cooper* v. *Telfair*, 4 Dall. 14; *Morris* v. *The People*, 3 Denio, 382.)

IX. The tax imposed upon foreign insurance companies is less than upon our own. The latter pay a tax on their whole capital, while the former pay a percentage on the premiums.

By the Court. Ingraham, First J.—This action is brought against the defendants upon a bond given under the statute in relation to insurances made by individuals and associations unauthorized by law, conditioned that Noble would render a

true account of the premiums received for such insurances, and pay two per cent. on such premiums to the treasurer of the plaintiffs.

The defendants demur to the complaint upon the ground that the complaint does not state a sufficient cause of action, that the act of the legislature under which the bond was given is unconstitutional, in violation of the constitution of the United States and of the state of New York.

The demurrer was overruled at special term, and judgment entered for the plaintiffs, from which the defendants appeal.

The objections to the validity of the act are founded on the constitution of the United States and of the state of New York.

It is contended, first, that the act is unconstitutional, because it makes a discrimination between the citizens of this state and those of other states, and is in contravention of that provision which secures to the citizens of each state the rights and immunities of those of other states. (Constitution of the United States, art. 4, § 2, subd. 1.)

An examination of the statute under which the bond was given will at once show that this objection is without foundation. The operation of the article is not confined to foreign corporations or individuals of other states.

The several statutes may be found at 1 R. S. 714. (Sess. Laws of 1837, p. 21, and Sess. Laws of 1849, p. 239). These statutes apply equally to the citizens of this state as of others, to insurers in this state as well as in others, in fact to everybody who acts as agent, for any individual or corporation in effecting insurance, except for corporations organized under the laws of this state.

The effect of these statutes is to prohibit the agency of citizens of this state, as well as of other states; and it operates more upon citizens of this state if, as is generally the case, the agent is a citizen of the state where he resides.

It was conceded on the argument that the state might prohibit foreign corporations from bringing actions in our courts. That concession yields the whole point in this objection. If a distinction can be made between foreign corporations and

those of this state as to bringing actions, surely a like distinction may be made as to their doing business in the state, and as to the appointment of agents in the state. A contrary rule would deprive the state of the power to prohibit the circulation of bills of foreign banks, while they permit banks created by their laws to pass their bills, and would interfere with many important powers now exercised by the state legislatures.

It is enough, however, to say that there is nothing local in these acts. They apply to agents, whether citizens of this state or others, and they relate to insurances, whether made by citizens of New York or citizens of other states, and to corporations created by other states, whether the stockholders were citizens of this state or other states.

The second ground of demurrer arises under the constitution of the United States and under the constitution of the state of New York. The statute of 1849 gives the premium so to be paid by agents of insurers, to the Fire Department of the city of New York.

This is said to be a violation of the provision which regulates the taking of private property, and it is urged that the law is void because it makes the tax payable to the plaintiffs.

The laying of a tax or requiring a license fee to be paid can never be considered as taking private property in the sense used in the constitution. It is a charge for the privilege of doing an act which the party assessed is not under any obligation to do, and the omission to do which will relieve him from the obligation to pay the charge.

This is no compulsory taking of private property.

The same might be said of all local taxes which are collected and paid to the counties or towns, and not to the state at large, and might with much more propriety be applied to taxes raised for special purposes of charity under local acts and confined to specified districts.

It has always been conceded that the legislature has the power to apply moneys raised, either by tax or otherwise, to purposes of charity. There can be no doubt that the plaintiffs

The Fire Department *v.* Noble.

are the representatives of a public charity well worthy of support, and entitled to the favor of the public, even if it cannot be said of it that such an appropriation is the applying of moneys to the public use.

If the tax may be imposed for the benefit of the department, I see no reason why it may not be payable at once to them instead of passing through the state treasury for that purpose.

The passenger act furnishes an illustration of similar legislation, and there are on the statute books many acts in which a fee for license or a penalty for a violation of law is made payable directly to the body to which it is to be applied, and they are authorized to maintain an action therefor.

That the legislature may regulate insurance in this state; that they may designate who may make insurance; that they may prohibit agencies except upon certain conditions; that they may impose as such condition the payment of an annual tax to a charitable department of the city government, and authorize such department to collect the same, appear to me powers within the authority of the legislature, and the exercise of such power in nowise interferes with the provisions either of the United States or state constitution.

Neither of the grounds of the demurrer are well taken. The judgment of special term should be affirmed.

Judgment affirmed.