ERIE RAILWAY COMPANY *v.* PENNSYLVANIA.

1. A railroad 455 miles long, 42 miles of which were in a State other than that by which it was incorporated, held to be "doing business" within the State where the 42 miles were, within the meaning of an act taxing all railroad companies "doing business within the State and upon whose road freight may be transported."

2. It being settled law that the language by which a State surrenders its right of taxation, must be clear and unmistakable, a grant by one State to a corporation of another State to exercise a part of its franchise within the limits of the State making the grant, as above said, and laying a tax upon it at the time of the grant, does not, of itself, preclude a right of further taxation by the same State.

ERROR to the Supreme Court of Pennsylvania.

The question in this case was that of the right and intention of the State of Pennsylvania to impose a tax upon the gross receipts of the Erie Railway Company, a corporation created by the State of New York and having a portion of its road in Pennsylvania. The case was thus:

In May, 1868, the legislature of Pennsylvania passed an act, by the seventh and eighth sections of which there was imposed a tax of three-fourths of one per cent. upon the

gross receipts " of every railroad company, steamboat company, now or hereafter doing business in the State, and upon whose works freight may be transported, whether by such company or individuals."

Under this section the accounting officers of the State of Pennsylvania settled an account against the Erie Railway Company. From this settlement an appeal was taken, in pursuance of the practice of that State, by the company to the Dauphin County Court, where a verdict for $76,788 was rendered in favor of the State, which, upon an appeal to the Supreme Court of the State, was sustained. From this judgment of the Supreme Court a writ of error brought the case to this court.

It was decided by this court, as the reader will remember, in the case of the *State Tax on Railway Gross Receipts,*[*] that a tax upon the gross receipts of a railroad company is such a tax as it is within the power of the State to impose.

Not denying the effect of this decision, the Erie Railway Company still contended that the tax in question was not legal, for two reasons: 1st. Because this company was not intended by the legislature to be embraced within the terms of the act of 1868; and 2d, because the terms and conditions of former acts of the legislature had created an agreement with the company that it should be exempt from taxation except to a limited extent and in a specified manner, which was not the manner in which it was now taxed.

To understand these positions, it is necessary to give a short statement both about the company and about the acts of Pennsylvania, whose meaning was under consideration.

The Erie Railroad Company was chartered by an act of the legislature of the State of New York, April 24th, 1832, with power to construct a railroad from the city of New York to Lake Erie, through the southern tier of counties of the State of New York. By an act passed in 1846 it was authorized to locate a certain portion of its road in the State of Pennsylvania. By subsequent foreclosure and legislation

---

[*] 15 Wallace, 284.

the present Erie Railway Company was formed, with all the rights and authorities conferred upon the Erie Railroad Company.

On the 16th of February, 1841, the legislature of Pennsylvania, by an act in which it is recited that for the purpose of avoiding certain engineering difficulties in one of the counties of New York, through which the straightest course of the road of the Erie Railroad Company lay, it was desirable that the road should be located for a distance of about fifteen miles through the county of Susquehanna, a county on the north line of Pennsylvania, enacted that the said road might be located upon such route through said Susquehanna County as the company should find to be expedient. The Company was authorized to enter upon and take the lands of individuals; also gravel, stone, or wood, for the purpose of constructing the road; paying for the same if the amount was agreed upon; if not, to be ascertained by an appraisement of the damages as in the act is prescribed. Nothing of any sort was said in this act about taxation.

By a second act, an act of March 27th, 1846, authority was further given to this company to construct its road through another of the northern counties of Pennsylvania—the county of Pike—for a distance not exceeding thirty miles, with the same general powers and under the same general restrictions.

This act contained two provisions in reference to taxation.

One was in section five of the act, by which it was enacted that, after the road should be completed through the counties of Pike and Susquehanna, an accurate account of the cost of that portion of the road should be filed in the office of the auditor-general, and that, after the road should be completed to Dunkirk, or extended by any other improvement to Lake Erie, the company should annually pay into the treasury the sum of $10,000.

The other was in the sixth section, which provided that the stock of the company to an amount equal to the cost of the construction of that part of their road situate in Penn-

sylvania "shall be subject to taxation by this Commonwealth in the same manner and at the same rate as other similar property is or may be subject; . . . and the company shall annually make a statement of its affairs . . . and of the business done upon said road during the previous year, said statement to contain a full and accurate account of the number of passengers, amount and weight of produce, merchandise, lumber, coal, and minerals transferred on said road east of Dunkirk and west of Piermont."

But in neither section five nor section six was there any engagement in terms not to tax the road in any other way than by them was done.

The whole length of the Erie railroad is 455 miles, 42½ miles of which are in the State of Pennsylvania, in Pike and Susquehanna Counties.

The gross receipts of the company upon its main line (of which this 42½ miles were a part) in the year 1869 were $9,266,349.33. Of this sum $\frac{42\frac{1}{2}}{455}$ths, viz., $884,988.38, was adjudged to be the portion taxable in Pennsylvania under the statute imposing the tax in question. Upon this sum, three-fourths of one per cent. was imposed as a tax, and in this manner the sum of the tax for several years, with interest and expenses, was made up.

*Mr. W. W. McFarland, for the railroad company, plaintiff in error,* argued—

1st. That the legislature of Pennsylvania did not *intend* to bring this road within the tax provisions of the act of 1868, because the company was not "doing business" in that State in the sense intended in the act, but was, as to nearly all the freight from the transportation of which the gross receipts accrued, merely using the right of way through a small portion of the territory of Pennsylvania.

2d. That the railway company had purchased this right of way from the State of Pennsylvania and paid her for it, and that giving to the act of 1868 the construction which the accounting officers and the Supreme Court of the State on the appeal of this company gave to it, was really impair-

ing an obligation which the State had impliedly made by its act of 1846; an obligation not to tax the road otherwise than it was taxed by the two sections of that act; a taxation constant and heavy. The counsel relied much upon the case of the *New York and Erie Railroad Company* v. *Sabin,** where the Supreme Court thus defined the relations of the State to this corporation :

" We are of opinion that the annual tax of $10,000, imposed upon the company by the fifth section of the act of 27th March, 1846, was intended to compensate the Commonwealth of Pennsylvania for the right of way through her territory, and that the tax imposed by the sixth section of said act upon that portion of the company's stock which represents the costs of construction in Pennsylvania was meant to be in lieu of all other taxation of the property of the company within her borders."

This, he argued, was intended by the Supreme Court of Pennsylvania at that day to be a general and exhaustive statement of the liability of the company to the State, present and future, for the privileges which it exercised within the State. And the fact that the State did not, by its act of 1846, *in terms*, exempt the railway company from taxation, was, he argued, unimportant; since an obligation not to tax could arise by implication just as much as be made by formal words of contract. And here, as he argued, it was made by the tax—a heavy tax—actually laid by the two provisions about taxation in the act of 1846, authorizing the building of the road through the county of Pike. The maxim of *expressio unius*, &c., applied.

He argued further from certain details and machinery of the act of 1868, which he set out and relied on, that the provisions of the act of 1868 could not be made applicable to this case without requiring on the part of the court the introduction of new clauses and provisions which the legislature had not seen fit to introduce, and which clauses and provisions, the learned counsel argued, were beyond its power to introduce.

---

* 26. Pennsylvania State, 244.

*Mr. S. E. Dimmick, attorney-general of Pennsylvania (with whom was Mr. L. D. Gilbert), contra.*

Mr. Justice HUNT delivered the opinion of the court.

It is argued, in the first place, that the Erie company is not doing business in the State, in the sense intended by the act of 1868.   To this argument the answer is twofold:

First.  The Supreme Court of that State has held that this " company was doing business in the State in the sense of that act."   This construction of a State statute by the Supreme Court of the State, involving no question under the laws or Constitution of the United States, is conclusive upon us.   We accept the construction of State statutes by the State courts, although we may doubt the correctness of such construction.   We accept and adopt it, although we may have already accepted and adopted a different construction of a similar statute of another State, in deference to the Supreme Court of that State.*

Second.  We are of the opinion that the Supreme Court of Pennsylvania was right in its construction of the statute of 1868.

Construing together the seventh and eighth sections of the act, it is enacted " that every railroad company, steamboat company, &c., now or hereafter doing business in this State, and upon whose works freight may be transported, whether by such company or by individuals," &c., shall be liable to the tax in question.

It can scarcely be doubted that this company is doing business in the State of Pennsylvania when it receives gross earnings to an amount exceeding nine millions per annum for transportation over its road, of which forty-two miles lie within that State.   The statute does not limit the amount of business done, or the length of road upon which it is done, as fixing its liability to taxation.   The legal effect of the appellant's argument would be the same if four hundred and

---

* Randall *v.* Brigham, 7 Wallace, 530;  Williams *v.* Kirtland, 13 Id. 306; Tioga Railroad Co. *v.* Blossburg Railroad Co., 20 Id. 137.

thirteen miles of its road were within the limits of the State of Pennsylvania and forty-two miles only were in the State of New York, instead of lying as it now does.

We see no such difficulty in the machinery for the collection of the tax as should make us doubt the intention of the legislature. That, in fact, the State at once proceeded to, and has constantly persisted in, its exercise, affords strong evidence of its intention and of its understanding of its effect.

If it intended to impose the tax, and had the power to do it, the extent and the proportion to which it is carried belongs to the judgment and discretion of the State only. It is beyond our examination.*

That it has the power to enforce the tax by direct action upon that part of the road within its territory would seem to be reasonably certain, and that it would attempt to lay taxation to an extravagant or oppressive extent has not yet appeared. That it has exercised less than the full extent of its power, and has apportioned the tax according to the length of the road within the State, is not a just subject of complaint by the company.

The second objection is that the act of 1868 impairs the obligation of the State not to impose such a tax upon the Erie company.

It has been held many times in this court that a State may make a valid contract that a corporation or its property within its territory shall be exempt from taxation, or shall be subject to a limited and specified taxation.†

The court has, however, in the most emphatic terms, and

---

* State Tax on Railway Gross Receipts, 15 Wallace, 296; The Delaware Railroad Tax, 18 Id. 206.

† New Jersey *v.* Wilson, 7 Cranch, 164; Gordon *v.* Appeal Tax Court, 3 Howard, 133; Achison *v.* Huddleson, 12 Id. 293; Bank *v.* Knoop, 16 Id. 369; Dodge *v.* Woolsey, 18 Id. 331; Bank *v.* Skelly, 1 Black, 436; McGee *v.* Mathis, 4 Wallace, 143; Van Hoffman *v.* City of Quincy, Ib. 535; Home of the Friendless *v.* Rouse, 8 Id. 430; Washington University *v.* Rouse, Ib. 439; Wilmington Railroad *v.* Reid, 13 Id. 264; Tomlinson *v.* Branch, 15 Id. 460; Humphrey *v.* Pegues, 16 Id. 244.

on every occasion, declared that the language in which the surrender is made must be clear and unmistakable. The covenant or enactment must distinctly express that there shall be no other or further liability to taxation. A State cannot strip itself of this most essential power by doubtful words. It cannot, by ambiguous language, be deprived of this highest attribute of sovereignty. This principle is distinctly laid down in each of the cases referred to. It has never been departed from.

Tested by this rule, the contention of the appellant must fail.

On the occasion of the first act referred to, to wit, in 1841, by which the Erie Railroad Company was permitted to take lands and lay its tracks and run its cars through the county of Susquehanna, nothing was said in the act upon the subject of taxation. The value created or transferred to that county remained there like any other property of a corporation, and, like all other property, subject to the operation of the laws of the State.

The act of 1846, authorizing the building of the road through the county of Pike, contained two provisions in reference to taxation. But we find in neither any intimation of an intention to limit or to surrender the taxing power of the State. Two subjects of taxation are specified, and reports and details are required, from which it may be inferred that the legislature looked to other taxation thereafter. They taxed as far as was then thought proper, leaving the future to provide for the future. There is no suggestion of a release of any power or surrender of any authority possessed by the State. None of the cases decided by this court would justify a decision that, by the language we are considering, the general power of taxation was agreed to be surrendered by the State.

Nor do we find in *New York and Erie Railway v. Sabin*, cited by the appellant, anything in hostility to this construction. It was there held merely, as the State had imposed a tax upon the stock of the company to the extent of the cost of construction in that State, that implied an exemption

from the ordinary taxation for State and county purposes. It was said that to hold otherwise would be to subject the same property to double taxation, which it cannot be supposed was intended. The remarks of Mr. Justice Woodward, in *Erie Railway* v. *Commonwealth*,* give a full explanation of the meaning of the language employed in that case.

In *Easton Bank* v. *The Commonwealth*,† it was held that the designation in the charter of the bank of the payment of taxes on its dividends at a fixed rate was a mere designation of a tax *then* to be paid, and did not affect the power to impose other or greater taxes. The decisions of the State courts of Pennsylvania are quite in harmony with our own on this subject.

None of the objections are well taken, and the judgment must be

AFFIRMED.

---

* 66 Pennsylvania State, 84.

† 10 Id. 451, cited and approved in 18 Wal'ace, 227.