KAHN, J.T.C.
This is the court’s determination with respect to cross-motions for summary judgment involving railroad franchise tax assessments made by the Director, Division of Taxation, pursuant to *403 N.J.S.A. 54:29A-14.[1] In these cases, CSX and Norfolk (collectively, taxpayers)[2] , Virginia corporations, contest the Division’s assessments of New Jersey Railroad Franchise Tax, N.J.S.A. 54:29A-13 to -15 (RFT). The essence of taxpayers’ claims is twofold: (1) the statutorily-prescribed RFT allocation formula should be interpreted to require the allocation to be calculated on a proportion of shared use[3] or by use of a revenue ton-mile,[4] and that (2) New Jersey’s track mileage allocation formula,[5] as applied to the taxpayers, violates the Commerce Clause, Art. I, § 8, cl. 3, and Due Process Clauses of the Federal Constitution.
This court denies taxpayers’ motion for summary judgment and grants the Division’s cross-motion for summary judgment, thereby affirming the assessments under review herein. Taxpayers provided no information in their moving and responding papers with respect to their earnings arising out of New Jersey operations. Consequently, there is no evidence indicating that the Division’s track mileage formula, N.J.S.A. 54:29A-14, unfairly taxes New Jersey operations. To defeat the Division’s motion the taxpayers must make a showing, from information that they possess, or assert that they can obtain through discovery, that the formula used by the Division produces a result out of all proportion to income earned from New Jersey activities. A mere showing that the Division’s formula results in assessments that are significantly *404 greater than what would be produced by other formulas is of no legal or constitutional significance because there is no proof that those other formulas have any relation to the taxpayers’ New Jersey income. The comparison that is legally significant is between income derived from New Jersey activities and a given allocation formula — not the relation of one allocation formula to another allocation formula. The constitutionality of an allocation formula is not determined by whether the method provides the greatest tax relief.
FACTUAL BACKGROUND
These facts are not in dispute. Taxpayers are railroad companies that provide commercial transportation services throughout the United States. The primary source of taxpayers’ revenue is the operation of their equipment and facilities to transport freight by rail. In 1997, taxpayers filed a joint application with the Surface Transportation Board (STB) for the authority to operate the routes and assets of Consolidated Rail Corporation (Conrail), which owns some track within New Jersey.
After STB’s approval, taxpayers and Conrail entered into a “Shared Assets Area Operating Agreement for North Jersey” and a “Shared Assets Area Operating Agreement for South Jersey/Philadelphia” (the operating agreements). Under the operating agreements, taxpayers are permitted to:
a. Operate trains traveling from a location outside the shared assets through the shared assets areas, to another location outside the shared assets areas;
b. Operate trains traveling between a location outside the shared assets areas and certain rail yards or facilities located within the shared assets areas;
c. Operate unit trains traveling between a location outside the shared assets areas and a single customer’s business location within the shared assets areas; and
d. Operate unit trains traveling between a rail yard or facility within the shared assets areas and a single customer’s business location within the shared assets areas.
Each taxpayer is allowed to use certain Conrail tracks. Conrail is solely responsible for performing all local switching and yard services. Both taxpayers are allowed to use some tracks jointly or consecutively; the taxpayers have limited operation of the railways in New Jersey at any given time. Taxpayers are obligated *405 to report their actual track usage in miles to the STB, which information is utilized by the Division to calculate taxpayers’ RFT.
The Division is required to compute each railroad’s RFT and issue an assessment on or before June 1 of each year. The Division computes the RFT relying on track mileage reported to the STB by the taxpayers. Track miles reported as used within the State of New Jersey become the numerator of the fraction that determines the relationship between taxpayers’ New Jersey operations compared to the denominator, taxpayers’ track miles used in nationwide operations (including New Jersey). The resulting ratio is then multiplied by the taxpayers’ net operating income and then by the appropriate tax ratio of ten percent Taxpayers do not dispute the correctness of the calculations made by the Division based on this approach.
Subsequently, the Director issued a final determination imposing RFT assessments on taxpayers in the years 2000 through 2003, the tax year’s in issue, in the following amounts.
CSX NORFOLK DIRECTOR’S (apportionment (apportionment DETERMINATION factor to NJ) factor to NJ)
2000 $ 883,230.10(2.44%) $1,655,666.00(3.78%)
2001 $ 864,607.53(2.46%) N/A
2002 $1,120,745.21 (2.46%) $3,173,700.18 (3.78%)
2003 $1,316,301.58 (2.49%) $3,444,889.75 (3.78%)
Taxpayers objected to the Director’s determination. Taxpayers computed and paid their RFT by apportioning their net railway operating income based upon an apportionment factor that was determined by first excluding the New Jersey track over which taxpayers did not exercise full operating control from the apportionment factor computed by the Director. Taxpayers next recomputed their taxes based on a ton-miles factor, resulting in the following determinations.
*406 CSX NORFOLK TAXPAYERS’ (apportionment (apportionment DETERMINATION factor to NJ) factor to NJ)
2000 $117,772.47 (.38%) $227,704 (.52%)
2001 $199,355.82 (.55%) N/A
2002 $256,589.07 (.56%) $394,429.90 (.47%)
2003 $280,171.19 (.53%) $409,169.88 (.45%)
When comparing the Director’s New Jersey apportionment, pursuant to N.J.S.A. 54:29A-14, with taxpayers’ New Jersey apportionment, pursuant to a ton-mile formula, the ratio differentials are as follow.
CSX RATIO NORFOLK RATIO
2000 2.44% to .33% (7.39 to 1 ratio) 3.78% to .52% (7.27 to 1 ratio)
2001 2.46% to .55% (4.47 to 1 ratio) N/A
2002 2.46% to .56% (4.39 to 1 ratio) 3.78% to .47% (8.04 to 1 ratio)
2003 2.49% to .53% (4.70 to 1 ratio) 3.78% to .45% (8.4 to 1 ratio)
Taxpayers contend that other methods demonstrate that the Director’s track mile formula is unfair. The following chart was prepared by CSX and refers only to CSX operations. There was no demonstration by CSX as to how it allocated operating revenues to New Jersey. The chart suggests that the State’s formula assesses taxpayers at a higher rate than would result from the use of other methods. For example, the ratios reflect that if operating revenue had been the basis for apportionment in the year 2000, for every dollar assessed using apportioned operating revenues, the State track miles formula assessed $6.37.
*407 Alternative Ratios[6] 2000 2001 2002 2003
Operating Revenues 6.37 to 1 3.94 to 1 3.91 to 1 3.84 to 1
Locomotive Unit Miles 5.91 to 1 3.5 to 1 3.66 to 1 4,04 to 1
Freight Car Miles 6.89 to 1 4,75 to 1 2.75 to 1 4,17 to 1
Gross Ton-Miles_6.41 to 1 4.39 to 1 3.98 to 1 3.92 to 1
Train Honrs_5.87 to 1 NR 3.79 to 1 4.46 to 1
Three-factor N/A N/A N/A 3.99 to 1 apportionment formula[7]
The parties have filed cross-motions for summary judgment alleging that there is no genuine issue as to any material fact. R. 4:46-2. Taxpayers’ motion for summary judgment requests that the court strike the Director’s RFT assessment and require that the Director determine taxpayers’ RFT for the tax years at issue by apportioning their railway operating income using a ton-miles factor. Alternatively, taxpayers argue that if the court does not agree that the use of a ton-miles factor is statutorily and constitutionally mandated, then taxpayers request partial summary judgment, requiring an evidentiary hearing to determine their apportionment factor based on the percentage of their actual operations that are within New Jersey. Director’s cross-motion seeks to dismiss taxpayers’ complaints.
SUMMARY JUDGMENT STANDARD
Summary judgment should be granted where “the pleadings, depositions, answer’s to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46- *408 2(c). In Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 666 A.2d 146 (1995), the Supreme Court of New Jersey revised the summary judgment standard and articulated:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[Id. at 523, 666 A.2d 146.]
The court must also “accept as true all the evidence which supports the position of the party defending against the motion and must accord ... [the party] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.” Brill, supra, 142 N.J. at 535, 666 A.2d 146 (quoting Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1991)).
For the reasons hereinafter set forth, this court denies taxpayers’ motions for summary judgment and grants the Director’s cross-motion.
I. STATUTORY ARGUMENT
New Jersey imposes a two-part scheme of taxation on railroad companies. See N.J.S.A 54:29A-1 to -77. The first part imposes an annual property tax on railroad property that is in lieu of all other personal and real property taxes imposed by the State. See N.J.S.A. 54:29A-7, 54:29A-11.[8] The second part imposes the RFT, which is the tax at issue in this case. See N.J.S.A 54:29A-13.
The RFT is imposed on every railroad operating in New Jersey. See N.J.S.A. 54:29A-13 and N.J.SA 54:29A-2 (defining railroad). The RFT is imposed at the rate of 10% of each railroad’s net operating income for the preceding year that has been allocated to New Jersey. See N.J.SA 54:29A-13, -14.
*409 Under the RFT, a railroad’s net operating income is apportioned to New Jersey based on the percentage of the railroad’s operations that take place in New Jersey. N.J.S.A. 54:29A-14 specifically provides for the apportionment of income:
For the purpose of determining the measure of the tax imposed by this act, net railway operating income of each system, and of each railroad not part of a system, shall be allocated to this State in the proportion that the number of miles of all track over which the railroad or system operates in this State bears to the total number of miles of all track over which it operates.
[N.J.S.A 54:29A-14.]
Taxpayers argue that despite the clear statutory language, the apportionment method presently applied by the Director fails to follow the holding in Consolidated Rail Corp. v. Director, Div. of Taxation, 19 N.J.Tax 215 (2000) (hereinafter Conrail). In Conrail, the Tax Court held that N.J.S.A. 54:29A-14 “clearly directs that the calculation of the franchise tax be based solely on the net operating income and the amount of track miles over which a railroad has actually operated.” Id. at 220. Taxpayers argue that because Conrail directed that a proper apportionment of net railway operating income must be based on actual operations, a track mileage factor cannot adequately capture the taxpayers actual operations. Taxpayers claim that in order to capture actual operations, the formula must take into consideration such factors as the weight of the freight transported, the distance the freight was transported and the actual operations in New Jersey. Therefore, since the track mileage factor does not take those factors into consideration, the formula cannot adequately capture the taxpayers’ actual operations, as required by Conrail.
In Conrail, the taxpayer reported to the STB all miles of track over which the taxpayer had the right to operate, whether or not taxpayer actually operated over the track. The Director used the reported miles in the calculation of the RFT assessment, even though the taxpayer had mistakenly reported miles over which it had not operated. The taxpayer appealed its assessment to this court alleging that it should not be assessed based upon a calculation of track not actually utilized. In Conrail, this court determined that for purposes of computing RFT based on miles of track over which the railroad “operates,” the legal definition of the *410 term “operate” means all trackage miles that are actually operated over by the railroad, not miles of track over which the railroad has trackage rights. Ibid.
Taxpayers argue that in order to determine actual usage with respect to the term “operate,” as defined by Conrail, the Director must consider the movement of locomotives, railroad cars, and freights, and not simply track miles. However, Conrail did not hold that “operate” encompasses factors other than the actual track miles.
The STB requires the taxpayers to report track miles for trackage on which they have a right to operate, which may include track not actually utilized[9]. The Director utilized only track upon which taxpayers operated in calculating the RFT. Hence, taxpayers do not contest the Director’s calculations. Instead, taxpayers argue that because they operate jointly with other earners over certain track, the track miles reported as being operated over to the STB are limited by the operating agreements. Taxpayers argue that these operating agreements prevent them from utilizing the track to full potential, and therefore, said track miles should be discounted in some fashion for purposes of tax calculations. Taxpayers further argue that a ton-miles formula would more appropriately capture actual operations.
“[W]here [the] statutory language is clear, courts will enforce the statute according to its terms.” Conrail, supra, 19 N.J.Tax at 220 (quoting In re Vulcan Materials Co., 225 N.J.Super. 212, 220, 542 A.2d 25 (App.Div.1988) (alteration in original)). Here, the court finds that the statutory language of N.J.S.A. 54:29A-14 clearly calls for the use of track miles. The Director’s interpretation conforms to the clear statutory language. If the Legislature had intended to define the statute as being based on a ton-miles basis, or to include shared usage, it would have specifically stated same. The Director used the actual track miles reported by the *411 taxpayers to the STB as the appropriate numerator in the apportionment factor. Therefore, the Director’s calculations were consistent with the essential holding of Conrail.
II. CONSTITUTIONAL ARGUMENT
The Commerce Clause authorizes Congress to “regulate Commerce ... among the several states.” U.S. Const, art. I, § 8, cl. 8. The Commerce Clause has been interpreted to prohibit any state action that unduly burdens or interferes with interstate commerce. Quill Corp. v. North Dakota, 504 U.S. 298, 309, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91, 104-05 (1992). A state tax that unfairly apportions is unconstitutional. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 283, 97 S.Ct. 1076, 1081, 51 L.Ed.2d 326, 334 (1977). A tax must be both internally and externally consistent to meet the requirements of the commerce clause. Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545, 556 (1983). To be internally consistent, the tax must be formulated so that if it were applied by every taxing jurisdiction there would be no duplicative impositions of tax to create an impermissible interference with interstate commerce. Ibid. To be externally consistent, the apportionment factors used must reflect a “reasonable sense of how income is generated.” Ibid. The goal of apportionment is not exactitude but to obtain a “rough approximation” of corporate income. Exxon Corp. v. Wis. Dep’t. of Revenue, 447 U.S. 207, 223, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66, 81 (1980). In addition, the Commerce Clause “imposes no single formula on the States.” Container Corp. of America, supra, 463 U.S. at 164, 103 S.Ct. at 2939, 77 L.Ed.2d at 552.
In the context of the Commerce Clause as it relates to railroad taxes, the Supreme Court has held that states are “permitted considerable latitude in devising formulas to measure the value of tangible property located within their borders.” Norfolk & Western Ry. Co. v. Mo. State Tax Comm’n, 390 U.S. 317, 324, 88 S.Ct. 995, 1000, 19 L.Ed.2d 1201, 1206 (1968). However, “[a]ny formula must bear' a rational relationship, both on its face and in its application, to property values connected with the taxing state.” *412 Id. at 325, 88 S.Ct. at 1001, 19 L.Ed.2d at 1207. States are not “permitted, under the shelter of an imprecise allocation formula or by ignoring the peculiarities of a given enterprise to project the taxing power of the state plainly beyond its borders.” Ibid, (quoting Nashville C. & St. L. Ry. v. Browning, 310 U.S. 362, 365, 60 S.Ct. 968, 970, 84 L.Ed. 1254 (1940)). In other words, taxation by states outside of their borders “imposes an illegitimate restraint on the interstate commerce and ... denies [ ] the taxpayer the process that is his due.” Ibid.
Essentially, the Due Process Clause of the United States Constitution affords the same protection to the taxpayer in that it provides that no State shall deprive any person of “property, without due process of law.” U.S. Const. amend. V; U.S. Const. amend. XIV, § 1. In St. Louis Southwestern Railway Co. v. Arkansas, 235 U.S. 350, 35 S.Ct. 99, 59 L.Ed. 265 (1914), the Supreme Court held that collection of tax by a state constitutes a deprivation of property such that due process protections must be afforded to the taxpayer. In exercising its taxing authority, each state that levies a tax measured by income must determine the portion of the income of a multistate business enterprise that it can properly tax. See Exxon Corp., supra, 447 U.S. at 219-20, 100 S.Ct. at 2118, 65 L.Ed.2d at 78-79, Mobil Oil Corp. v. Commissioner of Taxes of Vermont, 445 U.S. 425, 439-40, 100 S.Ct. 1223, 1232-33, 63 L.Ed.2d 510, 522 (1980).
The focus of the current taxpayers’ challenge is on the constitutionality of the Director’s single factor formula pursuant to the RFT, specifically, the track miles method. The Supreme Court has repeatedly held that a single factor formula is constitutional on its face. See, e.g., Moorman Mfg. Co. v. Bair, 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197, 204-05 (1978). The Supreme Court stated that “[t]he legislative and constitutional provision of the state, that taxation of property shall be equal and uniform and in proportion to its value, is not violated by exacting a contribution according to their gross income, in proportion to the number of miles of railroad operated in the state____” Charlotte, C. & A.R. Co. v. Gibbes, 142 U.S. 386, 394, 12 S.Ct. 255, 257, 35 L.Ed. 1051, 1055 (1892). See also, Erie Ry. Co. v. Pa., 21 Wall. *413 492, 88 U.S. 492, 22 L.Ed. 595 (1874); Del. R.R. Tax. Minot v. Philadelphia, Wilmington and Baltimore R.R. Co., 18 Wall. 206, 85 U.S. 206, 21 L.Ed. 888 (1873). See also State of Maine v. Grand Trunk Ry. Co. of Can., 142 U.S. 217, 12 S.Ct. 121, 35 L.Ed. 994 (1891) (upholding a tax on gross receipts, where gross receipts were computed by multiplying the average gross receipts per mile over the whole system by the number of miles operated in the taxing state).
Therefore, a state can utilize a single factor apportionment method as it “does not purport to identify the precise geographical source of a corporation’s profits; rather, it is employed as a rough approximation of a corporation’s income that is reasonably related to the activities conducted within the taxing State.” Moorman Mfg. Co., supra, 437 U.S. at 273, 98 S.Ct. at 2344, 57 L.Ed.2d at 204.
In some cases, the Supreme Court has struck down apportionment ratios as unconstitutional as applied. In reaching that conclusion, the Supreme Court held that the taxpayer bears the burden of showing by “ ‘clear and cogent evidence’ that the income attributed to the State is in fact ‘out of all appropriate proportions to the business transacted in that State____’ ” Container Corp. of America, supra, 463 U.S. at 170, 103 S.Ct. at 2942, 77 L.Ed.2d at 556 (citations omitted). A taxpayer has to present sufficient evidence to show that the “application of the mileage method in its case has resulted in such gross overreaching, beyond the values represented by the intrastate assets purported to be taxed, as to violate ... the Constitution.” Norfolk and Western Railway Co., 390 U.S. at 326, 88 S.Ct. at 1001, 19 L.Ed.2d at 1208. However, the Supreme Court has not provided clear guidance as to the exact standard of “gross overreaching.” This case hinges upon that ambiguity, and requires this court has to define “gross overreaching.”
In the present matter, taxpayers contend that the RFT is unconstitutional as applied.[10] For taxpayers to succeed on sum *414 mary judgment, and for the court to find that the Director’s apportionment formula is unconstitutional as applied, two questions must be answered: (l)'does the evidence taxpayers present in the record sufficiently prove a disparity between their income attributed to New Jersey and their operations here; and (2) was the disparity so great as to violate the Commerce Clause and the Due Process Clause of the Constitution.
Taxpayers contend that the Director’s track-miles formula significantly overstates taxpayers’ income attributable to New Jersey. To prove such assertion, taxpayers first utilized a ton-miles approach to allocate income to New Jersey; CSX determined that .33%, .55%, .56% and .53% of their United States net operating income was attributable to New Jersey for the years 2000, 2001, 2002 and 2003, respectively. In contrast, the Director determined that an average of 2.4% of total income was attributable to New Jersey for the same four-year period. This study suggests that the Director’s method overstates New Jersey income on an average of 5.14 to 1 in comparison to taxpayers’ methodology. The same analysis, with respect to Norfolk, resulted in an 8 to 1 ratio.
Next, CSX, using a three-factor apportionment formula,[11] determined how much income should be attributed to New Jersey by measuring the average percentages of its property, payroll and receipts, within a jurisdiction. In comparing that apportionment to the Director’s apportionment, a 3.99 to 1 ratio was found. Finally, CSX points to other indicia in order to determine CSX’s activities within the State as compared to those activities as a whole within the United States. Utilizing those percentage figures,' CSX divided the Director’s track miles factor by the percentage listed for each measurement of activity to determine the following ratios:[12] operating revenues (4.51 to 1 ratio), locomotive unit miles (4.27 to 1 ratio), freight car miles (4.64 to 1 ratio), gross ton-miles (4.67 to 1 ratio) and train hours (4.7 to 1 ratio). Taxpay *415 ers argue that these ratio differences prove that the Director grossly taxed taxpayers’ New Jersey income.
Taxpayers rely on two Supreme Court decisions, Hans Rees’ Sons, Inc. v. North Carolina, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931) and Norfolk & Western Railway Co. v. Missouri State Tax Commission, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968), to support their argument.
In Hans Rees’ Sons, the Supreme Court invalidated North Carolina’s corporate income tax statute, which allocated by reference to a property allocation factor. Plaintiff there was engaged in the business of tanning, manufacturing, and selling belting and other heavy leathers. Hans Rees’ Sons, supra, 283 U.S. at 126, 51 S.Ct. at 386, 75 L.Ed. at 891. The business was incorporated in New York City, and had a manufacturing plant in Asheville, North Carolina. To facilitate sales, a warehouse was maintained in New York, from which shipments to customers were made from stock on hand. Id. at 127, 51 S.Ct. at 386, 75 L.Ed. at 892. The Asheville plant was used as the manufacturing plant and served as a supplemental supply house. Sales were made throughout the United States, Canada and continental Europe. Id. at 126-27, 51 S.Ct. at 386, 75 L.Ed. at 892-93.
The Commissioner of Revenue of North Carolina allocated approximately 80% of plaintiffs business income to North Carolina for purposes of the state’s corporate income tax. Id. at 134, 51 S.Ct. at 387, 75 L.Ed. at 895-96. The allocation was based on the proportion of the value of the plaintiffs real and personal property located within North Carolina to the value of its entire real and personal property. Id. at 128, 51 S.Ct. at 387, 75 L.Ed. at 892. Plaintiff contended that as applied, the tax violated the Commerce Clause and the Fourteenth Amendment. Id. at 125-26, 51 S.Ct. at 386, 75 L.Ed. at 889.
The Supreme Court found that the plaintiffs evidence tended to show that the average income for the tax years in question with its source within North Carolina was 17%, while the State, pursuant to the income tax statute, allocated approximately 80% of the plaintiffs average income to North Carolina (4 to 1 ratio). Id. at *416 134, 51 S.Ct. at 389, 75 L.Ed. at 906. The Supreme Court held that the plaintiff sufficiently proved that there was an unreasonable and arbitrary application of the corporate income tax in this particular circumstance and that the income attributed to North Carolina was out of all appropriate proportion to the business conducted by the plaintiff there. Id. at 135, 51 S.Ct. at 389, 75 L.Ed. at 908.
In the second case, Norfolk & Western, supra, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201, the Supreme Court invalidated Missouri’s state tax on the plaintiff railroad’s property, namely, rolling stock, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201, apportioned according to the percentage of the railroad’s total road miles that were located in Missouri. The plaintiff was a Virginia corporation with interstate rail operations which leased all of the property and rolling stock of another railroad company in Missouri so as to diversify business. Id. at 319, 88 S.Ct. at 998, 19 L.Ed.2d at 1203-04. By the terms of the lease, the plaintiff was liable for the taxes on the leased property. For 1965, the year in issue, the Missouri State Tax Commission assessed the taxpayer’s rolling stock at approximately $20 million. Id. at 320, 88 S.Ct. at 998, 19 L.Ed.2d at 1204. Plaintiff contended, in that case, that the assessment included rolling stock not located in Missouri, thereby violating the Due Process Clause and the Commerce Clause of the United States Constitution.
With respect to the assessment of rolling stock, the Commission used the mileage formula authorized specifically by the Missouri statute in question. Id. at 320-21, 88 S.Ct. at 998, 19 L.Ed.2d at 1204. The Commission, in effect, arrived at the assessment of rolling stock by applying to the value of all rolling stock, regardless of where located, owned or leased by the plaintiff, the proportion that the plaintiffs track miles in Missouri bore to all the track miles owned or controlled by the plaintiff.
The plaintiff submitted evidence based upon “an inventory of all [plaintiffs] rolling stock that was actually in Missouri on tax day.” Id. at 321-22, 88 S.Ct. at 999, 19 L.Ed.2d at 1205. The plaintiff arrived at an assessment of rolling stock of approximately $7.6 *417 million. Ibid. In fact, the plaintiff showed that its estimate of value was consistent with the assessment for the preceding year, 1964, and that neither the amount of rolling stock in Missouri nor the Missouri operations had materially increased during the tax year. Id. at 322, 88 S.Ct. at 998, 19 L.Ed.2d at 1206.
The Supreme Court recognized the practical difficulties in apportionment, and that a close correspondence between the results of computations using the mileage formula and the value of property in the state was not required. Nevertheless, it held that an unexplained gross discrepancy such as was demonstrated by the plaintiff was forbidden. Id. at 327, 88 S.Ct. at 1002, 19 L.Ed.2d at 1208. The Supreme Court reiterated that the plaintiff had met its “heavy burden” of establishing that the challenged formula resulted in “gross overreaching.” Id. By inventorying and valuing all of the plaintiff railroad’s property subject to the disputed tax within Missouri, the plaintiff was able to conclusively establish that the value of its taxable property was substantially less than the disputed assessment based on a mileage apportionment. Id. at 326-27, 88 S.Ct. at 1002, 19 L.Ed.2d at 1208.
The court rejects taxpayers’ reliance on Hans Rees’ Sons and Norfolk & Western. This court holds that taxpayers have failed to meet then burden of proof.
Ten years after the Norfolk & Western decision, the Supreme Court, in Moorman Mfg. Co., supra, 437 U.S. at 267, 98 S.Ct. at 2341-42, 57 L.Ed.2d at 201-02, rejected using an alternative apportionment formula as a comparison. In Moorman, an action was brought by plaintiff manufacturing company challenging the constitutionality of Iowa’s single-factor sales formula to apportion income of interstate business for income tax purposes. The plaintiff attempted to employ a three-factor apportionment formula to prove that its tax liability would be substantially less if the State used its formula. Moorman Mfg. Co., supra, 437 U.S. at 270, 98 S.Ct. at 2343, 57 L.Ed.2d at 203. The Supreme Court rejected that argument and stated that “the States have wide latitude in the selection of apportionment formulas and that a formula-produced assessment will only be disturbed when the *418 taxpayer has proved by ‘clear and cogent evidence’ that the income attributed to the State is in fact ‘out of all appropriate proportion to the business transacted ... in that State.’ ” Id. at 274, 98 S.Ct. at 2345, 57 L.Ed.2d at 205 (citation omitted). The Supreme Court found that plaintiff in that case did not attempt and thereby failed to prove the amount of its actual net income from Iowa activities for the years involved. In reaching that decision, the Supreme Court noted that the concurring opinion of the Iowa Supreme Court had opined that it should not be impossible for a sophisticated corporation to prove its “actual income from activities in a particular’ state.” Id. at 275, n. 9, 98 S.Ct. at 2345, n. 9, 57 L.Ed.2d at 206 (citation omitted).
Here, pursuant to Moorman, the court determines that taxpayers failed to provide sufficient evidence to meet their heavy burden. Taxpayers, like the plaintiff in Moorman, have attempted to use the ton-miles factor, three-factor apportionment formula, and other measures described above to show that the Director’s formula is unconstitutional as applied. In both Hans Rees’ Sons and Norfolk & Western, the Supreme Court was persuaded by the plaintiffs’ evidence of actual data and detailed accounting that conclusively proved that, in fact, their income was derived from other states. In Hans Rees’ Sons, supra, 283 U.S. at 134, 51 S.Ct. at 389, 75 L.Ed. at 906-07, the plaintiff presented evidence from three different sources that proved that the bulk of its income was attributable to New York, and not North Carolina. In Norfolk & Western, supra, 390 U.S. at 321-22, 88 S.Ct. at 999, 19 L.Ed.2d at 1205, the plaintiffs evidence of actual inventory count showed that the Commission there arbitrarily attributed significantly more rolling stocks to the plaintiffs operation in Missouri than actually used.
Based on the record, however, this court cannot point to any “clear and cogent evidence” that demonstrates that the Director grossly over-taxed taxpayers’ New Jersey income. The ton-miles factor and the three-factor apportionment formula utilized by taxpayers at best show that there are other methods that could be utilized to measure taxpayers’ net income relating to New Jersey activities. CSX further attempts to use a single-factor ratio, *419 described above, to compare to the results obtained from the Director’s formula. The comparison between the State’s apportionment method and a taxpayer’s method was clearly rejected by the Supreme Court in Moorman.[13] Taxpayers provided no evidence as to earnings arising from New Jersey operations with respect to the method of charging customers. Their affidavit only indicated that they charged on the basis of freight transported and the distance that such freight is transported. Their comparisons bore no relationship to income arising out of New Jersey income.
Having denied taxpayers’ current evidence as insufficient, nothing in the record demonstrates detailed evidence to prove that the amount of taxpayers’ actual net income from New Jersey activities, as compared to income derived from other states, was grossly over-taxed by the Director. This court, therefore, has no basis to assume that the Director’s track-miles formula produced a grossly unfair result.[14] As in Mom-man, this court is not persuaded that the other measures and formulas proffered by taxpayers have conclusively proven that a gross disparity exists between taxpayers’ actual New Jersey income and the Director’s apportionment of taxpayers’ New Jersey income. The fact that some methods of calculation require taxpayers to pay less taxes to the State of New Jersey is not the test of unconstitutionality. Taxpayers failed to prove the unconstitutionality of the formula as applied.
Taxpayers also urge the court to adopt other states’ apportionment methods. The court recognizes that other states utilize varying methods of apportionment, including Florida, Illinois and Michigan, which have adopted a ton-miles factor for apportioning railroad income. New York, Pennsylvania and Texas use a revenue-miles factor, which reflects the number of revenue miles traveled within the state, divided by the number of revenue miles traveled. However, the Commerce Clause “imposes no single *420 formula on the States.” Container Corp. of America, 463 U.S. at 164, 103 S.Ct. at 2939, 77 L.Ed.2d at 552. The court is of the opinion that any formula utilized by a taxing state may occasionally over-reflect or under-refleet income attributable to the taxing state. Yet, despite this imprecision, courts have “refused to impose strict constitutional restraints on a State’s selection of a particular formula.” Moorman Mfg. Co., supra, 437 U.S. at 273, 98 S.Ct. at 2344, 57 L.Ed.2d at 204-05. The goal of apportionment is not exactitude but merely a “rough approximation.” Exxon Corp., supra, 447 U.S. at 223, 100 S.Ct. at 2121, 65 L.Ed.2d at 82.
III. RAILROAD REVITALIZATION AND REGULATORY REFORM ACT OF 1976 (4-R ACT)
N.J.S.A. 54:29A-14 imposes an annual franchise tax on all railroads operating in New Jersey at a rate of 10%, differing from the Corporate Business Tax rate of 9% imposed on other corporate franchises. Taxpayers argue that this taxation scheme violates the Railroad Revitalization and Regulatory Act, 49 U.S.C. § 11501 (“4R Act”), which prohibits a state from imposing a tax “that discriminates against” a railroad. The primary purpose of the Act is “to insure that railroads are not forced to carry a heavier tax burden than other commercial and industrial property.” Chrysler Rail Transp. Corp. v. Holt, 845 F.Supp. 463, 468 (W.D.Mich.1994).
Taxpayers cite Kansas City Southern Railway Co. v. McNamara, 817 F.2d 368, 376 (1987), for the proposition that “[i]n a 4-R case, the railroads need only establish that the tax is facially discriminatory, after which the tax must be justified by the state.” However, the 4-R Act does not:
[¡Impose the same exact tax on railroads as they impose on other commercial and industrial property. States merely need to insure that the tax they do impose on railroads is not discriminatory.
[Chrysler Rail Transp. Corp., 845 F.Supp. at 466.]
The Sixth Circuit, in Chrysler Rail Transportation Corp., cited Norfolk & Western Railway Co., supra, 390 U.S. 317, 88 S.Ct. 995, 19 L. Ed.2d 1201, for the proposition that “[t]he mileage formula taxing of railroads, which the State has chosen to utilize, is an *421 alternative apportionment system ...” and hence, non-discriminatory. Chrysler Rail Transp. Corp, supra, 845 F.Supp. at 466. This court adopts the Sixth Circuit’s decision.
This court finds that the taxpayers have failed to demonstrate sufficient facts to declare the RFT unconstitutional. This court also finds, contrary to taxpayers allegations, that the formula set forth in the RFT is non-discriminatory when viewed in the context of the entire States taxation scheme. Taxes were not computed in the same manner as those computed under a corporate business tax scheme. The computations were specifically designed for the railroad industry and to that effect, do not capture income in the same manner. As an alternative apportionment scheme need not impose the exact same tax, see Chrysler Rail Transp. Corp., supra, the fact that New Jersey imposes a 10% tax rate on railroads while imposing a 9% tax on other corporate franchises does not violate the 4-R Act.
CONCLUSION
For the foregoing reasons, taxpayers’ motions for summary judgment are hereby denied. With respect to the Director’s cross-motion for summary judgment, seeking dismissal of the complaints, this court has viewed taxpayers’ evidence in the light most favorable to the taxpayers, including all reasonable inferences therefrom. Brill, supra, 142 N.J. at 523, 666 A.2d 146. As aforesaid, this court finds that taxpayers failed to meet the requisite burdens; therefore, summary judgment must be granted dismissing taxpayers’ complaints.
The Tax Court Clerk/Administrator shall enter judgment affirming the original assessments in accordance with this opinion as follows:
CSX NORFOLK
2000 $ 883,230.10 $1,655,666.00
2001 $ 864,607.53 N/A_
2002 $1,120,745.21 $3,173,700.18
2003 $1,316,301.58 $3,444,889.75

 Assessments under review herein involve years 2000-2003 for taxpayer CSX and 2000, 2002, and 2003 for taxpayer Norfolk. Norfolk did not appeal its assessment for 2001.

 By order entered April 8, 2003, the court consolidated the actions pertaining to CSX Transportation, Inc. v. Director, Division of Taxation, and Norfolk Southern Corp. v. Director, Division of Taxation.

 Shared usage would take into consideration how the sharing of rail track limits the taxpayers' usage of that track. However, taxpayers did not offer into evidence actual calculations.

 A ton-miles factor is determined by dividing a railroad’s ton-miles within the state by the railroad’s ton-miles everywhere. One ton-mile arises from transporting one ton of freight one mile.

 A track mile is the length of single track between two points.

 Ratios were determined by dividing the Director's track miles factor by the percentage listed for each measurement of activity.

 Three-factor apportionment measures the average percentages of a taxpayer's property, payroll and receipts within a jurisdiction.

 Those sections have not been challenged by taxpayers herein.

 The instructional language in the STB is to report "tracks operated and maintained by others, but over which the respondent has the right to operate some or all of its trains." See STB Class I Railroad Annual Report, Schedule 700 (1999).

 Taxpayers do not allege facial unconstitutionality.

 See footnote 8, supra.

 Comparisons based on record keeping and data collection requirements of the Surface Transportation Board and then averaged over a four-year period.

 In fact, the plaintiff, in that case, also utilized a three-factor apportionment formula to prove disparity, which was rejected.

 It is important to note that income evidence was the deciding factor in Hans Rees' Sons and Norfolk & Western, and the taxpayers were said to have met their heavy burden.