CHRYSLER RAIL TRANSPORTATION
CORP., a Delaware Corporation, et
al., Plaintiffs,

v.

Leslie F. HOLT, as Acting Chair of the
State Tax Commission of the State of
Michigan, et al., Defendants (Two
Cases).

Nos. 5:92–CV–82, 5:93–CV–92.

United States District Court,
W.D. Michigan,
Lansing.

Jan. 3, 1994.

464

Peter S. Sheldon, Dickinson, Wright, Moon, Van Dusen & Freeman, Lansing, MI and Terrence J. Benshoof, Terrence J. Benshoof & Associates, Woodridge, IL, for plaintiffs.

Russell E. Prins, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Revenue Div., and Ross H. Bishop, Asst. Atty. Gen., Lansing, MI, for defendants.

## *OPINION*

HILLMAN, Senior District Judge.

This action involves two consolidated railroad tax cases. Case No. 5:92–cv–82 seeks relief for the 1992 tax year and Case No. 5:93–cv–92 seeks relief for the 1993 tax year. Plaintiffs assert that Michigan state taxes, as applied to them, are discriminatory and in violation of section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4R Act"). Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

This case is presently before the court on cross motions for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact. In such cases, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Plaintiffs and defendants agree that there is no issue of material fact and that this case is ready for decision.

## *FACTS*

Chrysler Rail Transportation Corporation, ITEL Rail Corporation, and General Electric Capital Railcar Leasing Service Corporation ("plaintiffs") are all non-Michigan corporations engaged in the leasing of railcars. All plaintiffs own railcars which are used within the state of Michigan. Plaintiffs do not own locomotives to pull their railcars and do not own trackage in Michigan. Instead plaintiffs

lease their railcars to companies which use those cars in Michigan. The primary defendant, The State Tax Commission of the State of Michigan ("the State"), is an agency of the State of Michigan.

Under Michigan law, railroad property has "situs," and is thus taxable in Michigan if that property is "owned, used and occupied by them [the business] within the limits of this state, and also such proportion of their rolling stock, cars and other property as is used partly within and partly without this state, as herein provided to be determined." M.C.L. § 207.5. If situs is established, then the railroad property is taxed centrally by the State of Michigan rather than by local units of government. This tax is levied under the provisions of M.C.L. § 207.4, *et seq.* To ascertain the value of the property subject to the tax M.C.L. § 207.9 provides that "[i]n ascertaining the true cash value of the property in Michigan ... the said state board of assessors shall be guided by the relation which the aggregate car mileage made or run by the entire number of cars owned or operated by each of such companies bears to the car mileage made or run by the entire number of cars owned or operated by any such company within this state."

While all railroads are subject to the tax levied under M.C.L. § 207.4, *et seq.,* railroads may qualify for a railroad tax credit under M.C.L. § 207.13. That section provides that railroad companies that perform certain maintenance or improvements on their right-of-ways located within Michigan are entitled to a credit against their tax equal to 25% of the amount expended on improvements. Thus, in order to receive the tax credit, a railroad must own trackage within the state and must perform improvements on that trackage.

While the state laws authorize taxation of all railroads and railcar owners, in practice few railroads or railcar owners are actually required to pay a tax. The state admits that those railroads which own trackage in Michigan typically pay no tax because the tax credit is usually larger than the tax due. The State also admits that it does not actively seek information for tax purposes concerning ownership of railcars used in Michigan.

Further, the State admits that it assumes that the major out-of-state railroads pay full taxes in their home state and thus are not subject to tax in Michigan.

In 1992, however, the state obtained data concerning railcars which were used in Michigan on the Grand Trunk Western Railroad, but were not owned by a Michigan railroad and were thus not previously taxed in Michigan. Initially the State erroneously attributed ownership concerning a long list of railcars to the plaintiffs based on the information that all these railcars were registered at the same address. The State later discovered that this address was merely that of a management corporation. As such, the State significantly reduced the number of railcars attributable to plaintiffs. The State then calculated the tax due based on the mileage formula outlined by state statute. The State is now attempting to tax the plaintiff railroad companies.

Plaintiffs assert that the state tax violates Section 306 of the 4R Act of 1976, codified at 49 U.S.C. § 11503. First, plaintiffs allege that the mileage formula used to compute the tax violates Section 306. Second, plaintiffs assert that because instate railroads receive a tax credit unavailable to plaintiffs, the tax is per se discriminatory in violation of Section 306. Last, plaintiffs assert that because the tax is applied only to plaintiffs, it is de facto discriminatory in violation of Section 306.

### ANALYSIS AND DISCUSSION

In the 1960s and 1970s many railroads were failing. One reason being that states and localities were taxing railroads at higher rates than they were taxing other commercial and industrial properties. In 1976, concerned about the state of the nation's rail system and about the heavy tax burden railroads were being forced to carry, Congress passed the 4R Act. Section 306 of the 4R Act was specifically designed to eliminate state and local government taxes which were discriminatory against railroads. Congress did not attempt to remove the railroads from the tax roles, but rather to insure that the railroads were afforded equal treatment with other taxpayers.

Under Section 306, states were expressly prohibited from assessing rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property has to the true market value of that other commercial and industrial property. In other words, states could not over value railroads in an effort to collect a greater tax from them. States were also prohibited from collecting an ad valorem property tax from railroads at a tax rate that exceeds the tax rate applicable to commercial and industrial property. Finally, states were prohibited from imposing any other tax that discriminates against a rail carrier.

■ The primary purpose of Section 306 is to prohibit states from collecting a greater tax from railroads than from other commercial and industrial property owners; discriminatory tax rates and valuation methods are expressly prohibited. "Property taxes of railroads must be nondiscriminatory when compared with property taxes of every other class of commercial and industrial taxpayer." *Atchison, Topeka & Santa Fe Ry. Co. v. Bair*, 338 N.W.2d 338, 346 (Iowa 1983). The final clause of Section 306, prohibiting any other discriminatory tax, is a catch-all clause designed to keep states from developing new discriminatory tax strategies. This clause "is a broad provision intended to reach all types of discriminatory tax treatment." *Dept. of Revenue, State of Fla. v. Trailer Train*, 830 F.2d 1567, 1571 (11th Cir.1987), quoting *ABF Freight System, Inc. v. Tax Division of the Arkansas Public Service Comm.*, 787 F.2d 292, 298 (8th Cir.1986). It is under this catch-all clause that plaintiffs make their claims.

Plaintiffs assert three claims in their complaint. Plaintiffs assert that the mileage formula utilized by the State discriminates against them in violation of Section 306. Plaintiffs also claim that the tax credit available to in-state railroads is per se discriminatory. Finally, plaintiffs argue that the State's railroad tax is de facto discriminatory because the State does not enforce the tax codes equally.

### 1. The Mileage Formula

■ Plaintiffs assert that the mileage formula outlined in Michigan state law violates Section 306. Under the mileage formula, Michigan compares plaintiffs' railcars total traveled mileage within the state to the total traveled mileage outside of the state. Michigan then taxes based on the percentage of mileage that plaintiffs' railroad cars traveled in the state. The State asserts that rather than being discriminatory, this system is accommodating to the railroads. It is a much easier process, the State argues, for the railroad to keep tabs on mileage numbers than for the railroad to attempt to determine where every railcar is located on a particular tax lien date. *General American Transportation Corp. v. Limbach*, 1987 U.S. Dist. Lexis 13362 (S.D.Ohio December 28, 1987).

Plaintiffs assert, however, that this system is discriminatory against railroads. Plaintiffs argue that because all other commercial and industrial property in Michigan is only taxed if it is physically located in Michigan on the tax assessment date, to tax them under a different system is discriminatory. Plaintiffs cite no authority to support their argument. After reviewing plaintiffs' argument, I conclude that plaintiffs' argument is unpersuasive.

■ Under Section 306, states need not impose the same exact tax on railroads as they impose on other commercial and industrial property. States merely need to insure that the tax they do impose on railroads is not discriminatory. The mileage formula taxing of railroads, which the State has chosen to utilize, is an alternative apportionment system which has been used for many years. *Norfolk & W. Ry. Co. v. Missouri State Tax Comm.*, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968). It is well settled that states may tax a fair share of an interstate enterprise by establishing a fair formula. *Id.* at 323, 88 S.Ct. at 999–1000. Usually, such a formula involves a determination of the percentage of the taxpayer's assets attributable to the state and then the application of this percentage to the total value of the enterprise. *Id.* at 324, 88 S.Ct. at 1000. This is exactly the type of system which the defendant has established.

■ The party seeking to overturn an established tax valuation system, in this case the plaintiffs seeking to overturn the mileage formula system, has the burden of showing that the system is inappropriate by clear and convincing evidence. *Trinova Corp v. Department of Treasury,* 433 Mich. 141, 445 N.W.2d 428, 436 (1989); *Donovan Const. v. Mich. Dept. of Treasury,* 126 Mich.App. 11, 337 N.W.2d 297, 300 (1983). Plaintiffs have presented no evidence or authority which supports their assertion that the chosen mileage formula method of taxation is inappropriate or discriminates against railroads. Plaintiffs do not assert that the mileage formula method improperly over values their property nor do they assert that the system employs a tax rate higher than tax rates for other commercial property. After reviewing the evidence, I am satisfied that plaintiffs have failed to demonstrate that the mileage formula tax illegally discriminates against railroads.

### 2. *Per Se Discrimination—The Tax Credit*

■ Plaintiffs next argue that the state tax is discriminatory because in-state railroads receive a tax credit which is not available to out-of-state railroads. In *Trailer Train Co. v. Leuenberger,* 885 F.2d 415 (8th Cir.1988), state tax exemptions in Nebraska applied to three-fourths of all commercial and industrial property but did not apply to railcars. In that case, the court found that the tax was discriminatory since the exemption placed a heavy burden on the railroads. A similar conclusion was reached in *Clinchfield R. Co. v. Lynch,* 784 F.2d 545 (4th Cir.1986).

The *Leuenberger* and *Lynch* type of discriminatory tax credit does not, however, exist in this case. The credit in question is not a tax credit available only to commercial and industrial property owners. The tax credit is available to all railroad companies, and only railroad companies. Because the tax credit is available only to railroads, the tax credit does not violate the anti-discriminatory intent of Section 306. *Clinchfield R. Co. v. Lynch,* 784 F.2d 545 (4th Cir.1986). Indeed, the credit supports the railroads.

■ Plaintiffs' complaint arguably asserts that they are not afforded equal protection under the law because they do not receive the tax credit while others do receive the tax credit. Equal protection requires that persons similarly situated be treated the same by a law with a legitimate governmental purpose. The tax credit supports the legitimate governmental purpose of maintaining the nation's railway system. This guarantee of equal protection, however, is not limited merely to the enactment of a law, but necessarily extends to its application as well. Equal protection forbids unequal enforcement of facially valid laws, if such unequal enforcement is a product of an improper motive. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1885).

Plaintiffs' equal protection argument is not convincing. First, plaintiffs are not similarly situated with those companies that receive the tax credit. Plaintiffs own no trackage within the state. If plaintiffs owned right-of-way within Michigan and performed improvements on that right-of-way, the tax credit would be available to them. *CSX Transp. v. Tennessee State Bd. of Equalization,* 801 F.Supp. 28 (M.D.Tenn.1992); *Dept. Of Revenue, State of Fla. v. Trailer Train,* 830 F.2d 1567, 1572–73 (11th Cir.1987). Further, while individual plaintiffs do not receive the tax credit, they also do not have the extensive expenditures that in-state railroads have. Second, plaintiffs have failed to demonstrate any unequal enforcement of this facially valid law or any improper motive by the State.

I conclude that the tax credit of 25% of expenditure on maintenance and improvements to railroad right-of-ways does not discriminate against plaintiffs.

### 3. *De facto Discrimination—Unequal Enforcement*

■ Plaintiffs' final assertion is that the Michigan tax system is de facto discriminatory because it is assessed only against them. The State acknowledges that this tax currently is only being assessed against these three companies. Section 306 bars both de facto and de jure discriminatory taxation against railroads. *Louisville and Nashville R. Co. v. Department of Revenue, State of*

*Fla.*, 736 F.2d 1495 (11th Cir.1984). Discriminatory intent is not a precondition to recovery if disparate impact is shown. *Duchon v. Cajon Co.*, 791 F.2d 43 (6th Cir.1986).

Plaintiffs argue that the tax levied against them is de facto discriminatory because in-state railroads are not required to pay taxes, due to the tax credit for maintenance and improvements. Plaintiffs fail to cite any authority to support the assertion that the tax is de facto discriminatory due to the tax credit available to all railroads. For the reasons stated in the section above, I find that the tax credit does not discriminate against railroads in general, or against plaintiffs specifically, and does not violate the language or intent of the 4R Act. I am satisfied that the state tax levied against railroads is not de facto discriminatory.

Further, plaintiffs assert that the tax system is de facto discriminatory because: the State assumes that non-Michigan railroads are fully taxed elsewhere and thus does not seek to tax them; the State does not attempt to gather ownership information on railroad cars but has discovered ownership information concerning the plaintiffs' cars by chance; and, the State has chosen to tax plaintiffs while choosing not to tax other railroads which may be subject to the tax. Plaintiffs have not cited any authority to support their assertion that the method of identifying and collecting taxes employed by the State is discriminatory. The State admits to plaintiffs' factual assertions but argues that the tax is, nonetheless, not discriminatory.

In the present case, the Grand Trunk Western Railroad, in supplying the State with required information, also supplied the State with ownership information concerning railcars used in Michigan. Based on this information, which was not required to be submitted but in fact was submitted, the State investigated and determined that some of these railcars would be subject to state tax. The State then levied taxes against plaintiffs. The State chose not to tax cars on the Terminal Railway Alabama State Docks, a railroad owned by the state of Alabama. The State also choose not to tax some other railcar leasing companies because it deter-mined that the mileage amount within the state of Michigan was too small to make collection worthwhile.

The primary purpose of Section 306 was to insure railroads were not taxed in a discriminatory manner when compared with all other commercial and industrial property. The plaintiffs complaint, however, is not that railroads are being discriminated against when compared to other businesses. Rather plaintiffs complain that other railroads who may be subject to this tax have not been discovered or have been discovered and have not been taxed. While it may be that the State has not acted with due diligence in ascertaining ownership of interstate railcars, the State has not acted improperly. The State has chosen not to spend the time and money to actively seek out ownership information concerning all interstate railcars but instead has applied the tax if and when relevant ownership information becomes available and only if the amount of tax collectable makes collection worthwhile. While this method of enforcing the tax codes may be inefficient, it is not illegal.

I am satisfied that the state tax is not discriminatory and does not violate Section 306 of the 4R Act. The tax does not defy the purpose of Section 306. The simple fact that the plaintiffs in this case have been found subject to the tax, while others who may be subject have not yet been discovered, does not make this tax discriminatory.

## CONCLUSION

After thoroughly reviewing all the evidence, I am satisfied that this state tax does not discriminate against railroads in violation of Section 306 of the 4R Act, 49 U.S.C. § 11503. Section 306 is designed to insure that railroads are not forced to carry a heavier tax burden than other commercial and industrial property. Specifically, Section 306 establishes that tax rates must be similar, that valuation methods must be similar, and that other tax methods (such as credits or exemptions) must not create a system whereby railroads are required to pay more than their fair share of taxes. None of these types of situations are at issue in this case.

Plaintiffs merely argue that they must pay while others slip away. This argument is unpersuasive and does not relieve the plaintiffs of their obligations. For the reasons stated above, defendants' Motion for Summary Judgment is **GRANTED.**

### *ORDER*

In accordance with the opinion filed this date,

**IT IS ORDERED** that defendants' Motion for Summary Judgment is **GRANTED,** and these consolidated cases are hereby **DISMISSED.**