923 A.2d 252

CSX TRANSPORTATION, INC., PLAINTIFF–APPELLANT,
v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT–RESPONDENT.

NORFOLK SOUTHERN CORPORATION, PLAINTIFF–
APPELLANT, v. DIRECTOR, DIVISION OF
TAXATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 28, 2007—Decided May 24, 2007.

236

Before Judges CUFF, WINKELSTEIN and BAXTER.

*Michael A. Guariglia,* argued the cause for appellant, CSX Transportation, Inc. (*McCarter & English,* attorneys; *Mr. Guariglia,* of counsel; *Mr. Guariglia, David J. Shipley* and *Open Weaver Banks,* on the brief).

*Richard A. Leavy,* argued the cause for appellant, Norfolk Southern Corporation (*McDermott Will & Emery,* and *Peter L. Faber* (*McDermott Will & Emery*) of the New York bar, admitted pro hac vice, attorneys; *Mr. Leavy* and *Mr. Faber,* of counsel; *Mr. Leavy,* on the brief).

*Julian F. Gorelli,* Deputy Attorney General, argued the cause for respondent, Director, Division of Taxation (*Stuart Rabner,*

Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Mr. Gorelli,* on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

Plaintiffs, CSX Transportation, Inc. (CSX) and Norfolk Southern Corporation (Norfolk Southern), are the operators of railroads in New Jersey and elsewhere. CSX appealed to the Tax Court from the Railroad Franchise Tax (RFT) assessments imposed by the Director of the New Jersey Division of Taxation (Director) for tax years 2000, 2001, 2002, and 2003, and Norfolk Southern challenged the assessments for tax years 2000, 2002 and 2003. The tax is based on a calculation of each railroad's New Jersey-derived net operating income as a percentage of the net income the railroad derives operating world-wide. *N.J.S.A.* 54:29A–13 to –15. On cross-motions for summary judgment, the Tax Court affirmed the assessments. *CSX Transp., Inc. v. Dir., Div. of Taxation,* 22 *N.J.Tax* 399, 421 (2005).

To compute the percentage of each railroad's net income attributable to its operations in New Jersey, the Director multiplied a fraction against each railroad's nationwide net income. *Id.* at 405. As the numerator of the fraction, he used the miles of track over which the railroad operated within this State, and as the denominator, he used the miles of track over which the railroad operated nationwide. *Ibid.* He then applied the statutory ten percent tax rate, *see N.J.S.A.* 54:29A–13, to the railroad's income attributed to its New Jersey operations to arrive at the RFT payable for each tax year. *C.S.X., supra,* 22 *N.J.Tax* at 405; *see also N.J.A.C.* 18:23–4.1(a) (setting RFT at "the rate of 10 per cent of [the railroad's] net railway operating income adjusted and allocated on the basis of the percentage of all track miles operated within the State to the total track miles operated everywhere by such railroad"). In affirming the Director's assessments, the Tax Court upheld his apportionment formula. 22 *N.J.Tax* at 419.

On appeal to this court, plaintiffs maintain that the Director's formula is facially unconstitutional and unconstitutional as applied to their railroad operations; and that summary judgment in favor of the Director was not warranted as genuine issues of material fact remain in dispute.

CSX raises an additional issue. It claims that the ten percent annual franchise tax rate imposed by *N.J.S.A.* 54:29A–13 is a violation of 49 *U.S.C.A.* § 11501, the Railroad Revitalization and Regulatory Reform Act of 1976 (4–R Act). *CSX, supra,* 22 *N.J.Tax* at 420. The 4–R Act prohibits a state from imposing a tax "that discriminates against" a railroad. 49 *U.S.C.A.* § 11501(b)(4). CSX claims that the State has violated the 4–R Act because the ten percent RFT tax rate exceeds the nine percent Corporate Business Tax rate imposed on other corporate franchises. *See CSX, supra,* 22 *N.J.Tax* at 420; *N.J.S.A.* 54:10A–5(c)(1) (setting tax rate at nine percent for corporations that are not New Jersey S corporations); *N.J.A.C.* 18:7–3.6(a)1 (same).

We affirm the Tax Court's determination that the ten percent RFT tax rate does not violate the 4–R Act. Though we agree with the Tax Court's conclusion that the Director's apportionment formula is not unconstitutional on its face, we reverse summary judgment as to the tax assessments in favor of the Director because we conclude that plaintiffs presented sufficient evidence to establish a genuine issue of fact as to whether the formula is unconstitutional as applied to their New Jersey railroad operations. We remand for further proceedings on that issue.

I

In 1998, the Surface Transportation Board (STB), which is a governmental body within the United States Department of Transportation that regulates, among other things, railroad trackage rights, *see* 49 *U.S.C.A.* §§ 701, 721; 49 *CFR* § 1180 (2006), approved plaintiffs' joint application for authority to operate the routes and assets of Consolidated Rail Corporation (Conrail). As

a result of that approval, plaintiffs each acquired the use of certain Conrail track, some of which is located in New Jersey. On June 1, 1999, plaintiffs entered into operating agreements with Conrail, which permitted them to commence operations in New Jersey.

All railroads that operate in New Jersey are required to file annual reports with both the STB and the State. *See* 49 *U.S.C.A.* § 11145(a); 49 *C.F.R.* § 1241.11(a) (2006); *N.J.A.C.* 18:23–8.1. Those reports recount the total mileage the railroad operated both in New Jersey and worldwide. The Director used plaintiffs' mileage statistics as reported to the government agencies in preparing his allocation formula. *CSX, supra,* 22 *N.J.Tax* at 405.

In arriving at the numerator of the formula, the Director construed "the number of miles of all track over which the railroad or system operates in this State," *N.J.S.A.* 54:29A–14, to mean the miles of track each railroad is entitled to operate in New Jersey. That calculation includes the miles of track the railroad owns or leases, as well as the miles of track that, pursuant to the operating agreements, it has the right to use. The railroads, on the other hand, argue that "the number of miles of all track ... operate[d] in this State" refers only to those miles of track they actually use in this State, regardless of their right to use additional track. More significantly, they claim that other measures of their operations in New Jersey, rather than track-miles, provide a more accurate reflection of income they actually earned in this State.

The following tables summarize the calculations by the Director and each plaintiff for the respective tax years. They show the differences in percentage apportionment and tax assessed depending upon which formula is used. The Director used track-miles, and the railroads used ton-miles, which, as we will explain, is a measure of income a railroad typically uses to measure its operations.

## DIRECTOR'S APPORTIONMENT AND TAX

| | NORFOLK SOUTHERN | | CSX | |
| --- | --- | --- | --- | --- |
| | Percentage Apportionment | Tax Assessed | Percentage Apportionment | Tax Assessed |
| 2000 | 3.76% | $1,655,666.00 | 2.44% | $  883,230.10 |
| 2001 | N/A | N/A | 2.46% | $  864,607.53 |
| 2002 | 3.78% | $3,173,700.18 | 2.46% | $1,120,745.21 |
| 2003 | 3.78% | $3,444,889.75 | 2.49% | $1,316,301.58 |

## NORFOLK SOUTHERN APPORTIONMENT AND TAX

| Tax Year | Percentage Apportionment Ton-Miles | Tax Assessed |
| --- | --- | --- |
| 2000 | 0.517% | $227,704 |
| 2002 | 0.469% | $394,429.90 |
| 2003 | 0.449% | $409,169.88 |

In addition to ton-miles, CSX also used track-miles as did the Director; but, CSX used the miles of New Jersey track over which it actually operated, rather than the miles of track over which it had the right to operate, as the numerator in the fraction.

## CSX APPORTIONMENT AND TAX

| Tax Year | Percentage Apportionment Track Used | Tax Assessed | Percentage Apportionment Ton-Miles | Tax Assessed |
| --- | --- | --- | --- | --- |
| 2000 | 0.2994% | $108,294 | 0.3256% | $117,772.47 |
| 2001 | 0.2320% | $ 83,574 | 0.5534% | $199,355.82 |
| 2002 | 0.2322% | $105,988.68 | 0.5622% | $256,589.07 |
| 2003 | 0.2563% | $135,451.93 | 0.5303% | $280,171.19 |

As each table shows, the railroads' calculations resulted in a substantially lower assessed tax than did the Director's calculations.

## II

The trial judge characterized plaintiffs' claims as follows:

> The essence of taxpayers' claims is twofold: (1) the statutorily-prescribed RFT allocation formula should be interpreted to require the allocation to be calculated on a proportion of shared use or by use of a revenue ton-mile, and that (2) New Jersey's track mileage allocation formula, as applied to the taxpayers, violates the Commerce Clause, Art. I, § 8, cl. 3, and Due Process Clauses of the Federal Constitution.
>
> [*CSX, supra,* 22 *N.J.Tax* at 403 (footnotes omitted).]

In sustaining the Director's assessments, the judge ruled that plaintiffs provided insufficient information with respect to their earnings arising out of their New Jersey operations to prove that the Director's track-mileage formula unfairly taxed their New Jersey operations. *Ibid.*

The focus of plaintiffs' challenge in the trial court was the constitutionality of the Director's single-factor RFT formula using track miles. *Id.* at 412. Addressing this issue, and finding that the Director's formula was constitutional on its face, the judge observed:

> The Supreme Court has repeatedly held that a single factor formula is constitutional on its face. *See, e.g., Moorman Mfg. Co. v. Bair,* 437 *U.S.* 267, 273, 98 *S.Ct.* 2340, 2344, 57 *L.Ed.*2d 197, 204–05 (1978). The Supreme Court stated that "[t]he legislative and constitutional provision of the state, that taxation of property shall be equal and uniform and in proportion to its value, is not violated by exacting a contribution according to their gross income, in proportion to the number of miles of railroad operated in the state. . . ." *Charlotte, C. & A.R. Co. v. Gibbes,* 142 *U.S.* 386, 394, 12 *S.Ct.* 255, 257, 35 *L.Ed.* 1051, 1055 (1892). . . .
>
> Therefore, a state can utilize a single factor apportionment method as it "does not purport to identify the precise geographical source of a corporation's profits; rather, it is employed as a rough approximation of a corporation's income that is reasonably related to the activities conducted within the taxing State." *Moorman Mfg. Co., supra,* 437 *U.S.* at 273, 98 *S.Ct.* at 2344, 57 *L.Ed.*2d at 204.
>
> [*Id.* at 412–13.]

The judge also concluded that plaintiffs failed to provide sufficient evidence to support their as-applied argument to set aside the Director's formula. *Id.* at 418. The judge stated that, based on the record, plaintiffs could not point to any "clear and cogent evidence" that demonstrated that the Director grossly over-taxed the taxpayers' New Jersey income. *Id.* at 418. He concluded that plaintiffs' ton-miles factor and the other apportionment methods at best showed that other methods could be utilized to measure net income relating to New Jersey activities, but that plaintiffs failed

to demonstrate that the Director's formula was itself defective. *Id.* at 418–19. The judge concluded that plaintiffs "provided no evidence as to earnings arising from New Jersey operations with respect to the method of charging customers." *Id.* at 419.

The trial judge also rejected CSX's claim that the ten percent RFT rate violates the 4–R Act. He stated that the primary purpose of the 4–R Act is " 'to insure that railroads are not forced to carry a heavier tax burden than other commercial and industrial property,' " and CSX's proofs on that issue did not establish that the corporate business tax would impose less of a burden on CSX than did the RFT. *Id.* at 420–21 (quoting *Chrysler Rail Transp. Corp. v. Holt,* 845 *F.Supp.* 463, 468 (W.D.Mich.1994)). He explained:

> The Sixth Circuit, in *Chrysler Rail Transportation Corp.,* cited *Norfolk & Western Railway Co., supra,* 390 *U.S.* 317, 88 *S.Ct.* 995, 19 *L.Ed.*2d 1201, for the proposition that "[t]he mileage formula taxing of railroads, which the State has chosen to utilize, is an alternative apportionment system ..." and hence, non-discriminatory. *Chrysler Rail Transp. Corp, supra,* 845 *F.Supp.* at 466. This court adopts the Sixth Circuit's decision.
>
> ... Taxes were not computed in the same manner as those computed under a corporate business tax scheme. The computations were specifically designed for the railroad industry and to that effect, do not capture income in the same manner. As an alternative apportionment scheme need not impose the exact same tax, *see Chrysler Rail Transp. Corp., supra,* the fact that New Jersey imposes a 10% tax rate on railroads while imposing a 9% tax on other corporate franchises does not violate the 4–R Act.
>
> [*Ibid.*]

Accordingly, the trial court affirmed the Director's assessments for each tax year. *Id.* at 421.

## III

The RFT is levied based on income derived in the preceding year. *N.J.S.A.* 54:29A–13. Each railroad has submitted statistical evidence for the challenged tax years, which we have consolidated in the following tables, which include, for each railroad, its net operating income worldwide; its New Jersey gross revenue, which each railroad computed on a ton-mile basis; its New Jersey

operating expenses; the miles of track it operates worldwide; and the miles of track it operates in New Jersey.

## NORFOLK SOUTHERN

### 1999 STATISTICS FOR TAX YEAR 2000

| | |
|---|---|
| Net Operating Income Worldwide | $440,534,000 |
| New Jersey Gross Revenue (Ton-Miles Basis) | $ 20,068,000 |
| New Jersey Operating Expenses | $ 16,842,000 |
| Miles Operated Worldwide | 38,708 |
| Miles Operated in New Jersey | 1,454.769 |

### 2000 STATISTICS FOR TAX YEAR 2001

| | |
|---|---|
| Net Operating Income Worldwide | $840,346,000 |
| New Jersey Gross Revenue (Ton-Miles Basis) | $ 40,409,000 |
| New Jersey Operating Expenses | $ 32,782,000 |
| Miles Operated Worldwide | 38,520 |
| Miles Operated in New Jersey | 1454.769 |

### 2002 STATISTICS FOR TAX YEAR 2003

| | |
|---|---|
| Net Operating Income Worldwide | $912,051,000 |
| New Jersey Gross Revenue (Ton-Miles Basis) | $ 39,889,000 |
| New Jersey Operating Expenses | $ 34,793,000 |
| Miles Operated Worldwide | 38,515 |
| Miles Operated in New Jersey | 1454.77 |

## CSX

### 1999 STATISTICS FOR TAX YEAR 2000

| | |
|---|---|
| Net Operating Income Worldwide | $432,763,000 |
| New Jersey Gross Revenue | $ 21,549,000 |
| New Jersey Operating Expenses | $144,096,000 |
| Miles Operated Worldwide | 40,638 |
| Miles Operated in New Jersey | 996 |

### 2000 STATISTICS FOR TAX YEAR 2001

| | |
|---|---|
| Net Operating Income Worldwide | $323,892,000 |
| New Jersey Gross Revenue | $ 37,850,000 |
| New Jersey Operating Expenses | $204,823,000 |
| Miles Operated Worldwide | 40,558 |

| | |
|---|---:|
| Miles Operated in New Jersey | 996 |
| **2001 STATISTICS FOR TAX YEAR 2002** | |
| Net Operating Income Worldwide | $458,645,000 |
| New Jersey Gross Revenue | $ 38,149,000 |
| New Jersey Operating Expenses | $150,208,000 |
| Miles Operated Worldwide | 40,520 |
| Miles Operated in New Jersey | 995 |
| **2002 STATISTICS FOR TAX YEAR 2003** | |
| Net Operating Income Worldwide | $577,288,000 |
| New Jersey Gross Revenue | $ 41,267,000 |
| New Jersey Operating Expenses | $144,272,000 |
| Miles Operated Worldwide | 40,299 |
| Miles Operated in New Jersey | 1004 |

Because the railroads primarily generate their revenues from the transportation of freight, they have argued that ton-miles, which is the unit of measure that freight-carrying railroads in the United States typically use to measure their operations and revenues, be used by the Director in his apportionment formula. According to affidavits submitted by plaintiffs' officers, ton-miles are the unit of measurement plaintiffs use to report their revenue to both the federal and state governments. The affidavits explain in some detail how ton-miles are calculated and why they are used to reflect the railroads' operating income. The affidavits also point out how the use of ton-miles, as opposed to track-miles, demonstrates a significant disparity between the revenue attributable to New Jersey operations under the Director's formula and the revenue attributable to New Jersey operations under the railroads' ton-miles formula. Each plaintiff's New Jersey operating income as a percentage of its worldwide operations, as calculated by using ton-miles as the standard, is summarized as follows:

### PERCENTAGES OF NORFOLK SOUTHERN'S NEW JERSEY OPERATIONS COMPARED TO NORFOLK SOUTHERN'S TOTAL OPERATIONS

|  | 2000 | 2002 | 2003 |
|---|---|---|---|
| Ton-Miles | 0.28% | 0.47% | 0.45% |

### PERCENTAGES OF CSX'S NEW JERSEY OPERATIONS COMPARED TO CSX'S TOTAL OPERATIONS

|  | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|
| Ton-Miles | 0.3256% | 0.5534% | 0.5622% | 0.5303% |

The essence of plaintiffs' argument is that given this and other alternate methodologies for computing revenue derived from New Jersey operations, the track-mileage allocation formula applied by the Director results in such a grossly distorted sum of income attributed to the railroads' New Jersey operations that application of the Director's allocation formula violates the federal constitution.

## IV

The RFT is a franchise tax, which differs from a property tax, and is similar to taxes that are often called "business privilege taxes"; it is a "type of excise tax, namely a form of taxation not laid directly upon persons or property." *Werner Mach. Co. v. Dir. of Div. of Taxation,* 17 *N.J.* 121, 125, 110 *A.*2d 89 (1954), *aff'd,* 350 *U.S.* 492, 76 *S.Ct.* 534, 100 *L.Ed.* 634 (1956). "Franchise taxes are of two types, organization taxes, *i.e.,* fees imposed upon the grant of corporate powers, and excises levied periodically, usually annually, upon the franchise or privilege of corporations to do business in the State." *Id.* at 126, 110 *A.*2d 89. A "franchise tax" is "[a] tax imposed on the privilege of carrying on a business ([especially] as a corporation), [usually] measured by the business's income." *Black's Law Dictionary* 1470 (7th ed. 1999).

The pertinent statute here, which describes the method to compute the tax, states, in part:

> For the purpose of determining the measure of the tax imposed by this act, net railway operating income of each system, and of each railroad not part of a system, shall be allocated to this State in the proportion that the number of miles of all track over which the railroad or system operates in this State bears to the total number of miles of all track over which it operates.
>
> [*N.J.S.A.* 54:29A–14 (footnote omitted).]

The concomitant regulation, *N.J.A.C.* 18:23–4.6, uses similar language:

> The net railway operating income of each system or railroad not part of a system used to determine the measure of the franchise tax is to be allocated to this State in the same proportion as the total number of miles of all track over which the railroad or system operates in this State bears to the total number of miles of all track over which it operates.

The RFT is imposed on a railroad's net railway operating income attributable to New Jersey operations from the preceding year, at the rate of ten percent. *N.J.S.A.* 54:29A–13; *N.J.S.A.* 54:29A–14; *see also N.J.A.C.* 18:23–4.1 (setting RFT at "the rate of 10 per cent of its net railway operating income"); *N.J.A.C.* 18:23–4.2 (measuring RFT "by a taxpayer's net railway operating income"). A railroad does not file a tax return or self-assess its tax; instead, the Director computes each railroad's RFT liability and issues an assessment of the tax on or before June 1 of each year. *N.J.S.A.* 54:29A–15.

Taxes on railroad property have been subject to litigation in this State for more than sixty years. *See Central R.R. Co. of N.J. v. Dir., Div. of Tax Appeals,* 8 *N.J.* 15, 19, 83 *A.*2d 527 (1951), *appeal dismissed,* 342 *U.S.* 936, 72 *S.Ct.* 557, 96 *L.Ed.* 697 (1952). Passage of the New Jersey Constitution in 1947, calling for all real property in this State to be taxed at the general tax rate of the taxing district in which the property is located, resulted in substantial increases in taxes to railroads. *Ibid.* As a result, the tax laws were amended in an effort to provide "some measure of relief to the railroad companies in poor earning years and ... give[ ] the State an additional return in good earning years." *Id.* at 19–20, 83 *A.*2d 527.

■ Where a railroad does business both in this State and elsewhere, New Jersey can impose a tax only on that portion of

the railroad's income that is attributable to its operations in this State. *Container Corp. of Am. v. Franchise Tax Bd.*, 463 *U.S.* 159, 169–70, 103 *S.Ct.* 2933, 2942–43, 77 *L.Ed.*2d 545, 556 (1983); *Exxon Corp. v. Wis. Dep't of Revenue*, 447 *U.S.* 207, 219–20, 100 *S.Ct.* 2109, 2118, 65 *L.Ed.*2d 66, 78–79 (1980); *Moorman, supra,* 437 *U.S.* at 274, 98 *S.Ct.* at 2345, 57 *L.Ed.*2d at 205; *Norfolk & W. Ry. Co. v. Mo. State Tax Comm'n,* 390 *U.S.* 317, 324–25, 88 *S.Ct.* 995, 1000–01, 19 *L.Ed.*2d 1201, 1207 (1968); *Hans Rees' Sons, Inc. v. N.C. ex rel. Maxwell,* 283 *U.S.* 123, 135–36, 51 *S.Ct.* 385, 389, 75 *L.Ed.* 879, 908 (1931). Nevertheless, states are permitted considerable leeway "in devising formulas to measure the value of tangible property located within their borders." *Norfolk & W. Ry. Co., supra,* 390 *U.S.* at 324, 88 *S.Ct.* at 1000, 19 *L.Ed.*2d at 1206. The *Norfolk* Court observed that

> formulas usually involve a determination of the percentage of the taxpayer's tangible assets situated in the taxing State and the application of this percentage to a figure representing the total going-concern value of the enterprise. A number of such formulas have been sustained by the court, even though it could not be demonstrated that the results they yielded were precise evaluations of assets located within the taxing State.
>
> [*Id.* at 324, 88 *S.Ct.* at 1000, 19 *L.Ed.*2d at 1206–07 (internal citations omitted).]

While a taxpayer has a formidable burden to establish the invalidity of a state's formula for computing the tax on a business that derives a portion of its income from operations in the state, the state's formula must be fair under both the due process and commerce clauses of the United States Constitution. *Container Corp., supra,* 463 *U.S.* at 169, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556; *Moorman, supra,* 437 *U.S.* at 272–73, 98 *S.Ct.* at 2344, 57 *L.Ed.*2d at 204; *Hans Rees' Sons, supra,* 283 *U.S.* at 134, 51 *S.Ct.* at 389, 75 *L.Ed.* at 906. The Court in *Container Corp.* established a two-part test to determine the fairness of the formula.

> The first ... component of fairness in an apportionment formula is what might be called internal consistency—that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed. The second and more difficult requirement is what might be called external consistency—the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated. The

Constitution does not "invalidat[e] an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State." [463 *U.S.* at 169–70, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556 (quoting *Moorman, supra,* 437 *U.S.* at 272, 98 *S.Ct.* at 2344, 57 *L.Ed.*2d at 204.)]

An apportionment formula will be stricken "if the taxpayer can prove by clear and cogent evidence" that the income attributed to the state is in fact out of all appropriate proportion to the business transacted in that state, or has led to a grossly distorted result. *Id.* at 170, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556 (internal citations and quotations omitted).

## V

Against this legal framework, the Director's formula, on its face, survives plaintiffs' challenge. The method employed by the Director falls into the category of unitary business apportionment.

The unitary business/formula apportionment method ... calculates the local tax base by first defining the scope of the "unitary business" of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that "unitary business" between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction. This Court long ago upheld the constitutionality of the unitary business/formula apportionment method, although subject to certain constraints.

[*Id.* at 165, 103 *S.Ct.* at 2940, 77 *L.Ed.*2d at 553.]

"The method has now gained wide acceptance...." *Ibid.* A single factor formula, one that, as the name implies, takes into account only one factor, for instance, track miles, such as here, *see CSX, supra,* 22 *N.J.Tax* at 412, has been held to be presumptively valid, and facially constitutional by the United States Supreme Court. *See Moorman, supra,* 437 *U.S.* at 273, 98 *S.Ct.* at 2344, 57 *L.Ed.*2d at 205. The income apportionment method does not have to be exact. Dividing revenues and costs between in-state and out-of-state operations can never be made "with more than approximate correctness." *Norfolk & W. Ry. Co. v. N.C. ex rel Maxwell,* 297 *U.S.* 682, 684, 56 *S.Ct.* 625, 627, 80 *L.Ed.* 977, 980 (1936). A mileage-based methodology has been found to be facially valid, even though at times a tax based upon mileage may

not directly "bear to a property tax or even to one upon the value of a franchise." *Id.* at 685, 56 *S.Ct.* at 627, 80 *L.Ed.* at 980.

Here too, the Director's formula is valid on its face. While it may in fact be less accurate than other formulas, exact accuracy is not required. A formula based on track-miles, both within and without this State, provides a fair method to calculate the income earned by a railroad that operates in New Jersey and elsewhere. Plaintiffs have not demonstrated that the formula as written is not "approximately correct." Consequently, because the formula is valid on its face, the question becomes whether, as applied, it survives an analysis under the federal constitution.

## VI

The due process clause of the federal constitution "imposes two requirements for such state taxation: a 'minimal connection' or 'nexus' between the interstate activities and the taxing State, and 'a rational relationship between the income attributed to the State and the intrastate values of the enterprise.'" *Exxon Corp., supra,* 447 *U.S.* at 219–20, 100 *S.Ct.* at 2118, 65 *L.Ed.*2d at 79 (quoting *Mobil Oil Corp. v. Comm'r of Taxes,* 445 *U.S.* 425, 436, 437, 100 *S.Ct.* 1223, 1231, 63 *L.Ed.*2d 510, 520 (1980)). It is the second factor that is at play here—whether a rational relationship exists between the incomes the Director has attributed to plaintiffs' New Jersey operations and plaintiffs' incomes worldwide. In attacking the formula as applied, plaintiffs claim the Director's method does not accurately reflect their New Jersey income-generating activities. That, they say, is contrary to the requirement that income attributable to the State for tax purposes must be rationally related to values connected with the taxing state. *See Moorman, supra,* 437 *U.S.* at 273, 98 *S.Ct.* at 2344, 57 *L.Ed.*2d at 204. This argument implicates the external consistency requirement referred to in the case law, that the factors used for the apportionment formula reflect "a reasonable sense of how income is generated" within the State. *Container Corp., supra,* 463 *U.S.* at 169, 103 *S.Ct.* at 2942, 77 *L.Ed.*2d at 556.

■ No doubt, courts have recognized the difficulty in effectuating an exact apportionment. Nevertheless,

When, as in this case, there are different taxing jurisdictions, each competent to lay a tax with respect to what lies within, and is done within, its own borders, and the question is necessarily one of apportionment, evidence may always be received which tends to show that a State has applied a method, which, albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdiction.

[*Hans Rees' Sons, supra,* 283 *U.S.* at 134, 51 *S.Ct.* at 389, 75 *L.Ed.* at 905–06.]

Though a railroad challenging the application of a mileage formula has a heavy burden, it is not insurmountable. "Its task is to show that application of the mileage method in its case has resulted in such gross overreaching, beyond the values represented by the intrastate assets purported to be taxed, as to violate the Due Process and Commerce Clauses of the Constitution." *Norfolk, supra,* 390 *U.S.* at 326, 88 *S.Ct.* at 1001, 19 *L.Ed.*2d at 1208.

■ Gross discrepancies—meaning that "the impact of the state tax is not confined to intrastate property even within the broad tolerance permitted"—may render the formula unconstitutional as applied. *Id.* at 327, 88 *S.Ct.* at 1002, 19 *L.Ed.*2d at 1208. "The facts of life do not neatly lend themselves to the niceties of constitutionalism; but neither does the Constitution tolerate any result, however distorted, just because it is the product of a convenient mathematical formula which, in most situations, may produce a tolerable product." *Ibid.* Consequently, though the Supreme Court endorses the use of statutory apportionment in general and a track-mileage based formula specifically,

when a taxpayer comes forward with strong evidence tending to prove that the mileage formula will yield a grossly distorted result in its particular case, the State is obliged to counter that evidence or to make accommodations necessary to assure that its taxing power is confined to its constitutional limits.

[*Id.* at 329, 88 *S.Ct.* at 1003, 19 *L.Ed.*2d at 1210.]

■ Applying the facts here to the controlling law, we respectfully disagree with the Tax Court's determination that plaintiffs failed to demonstrate sufficient evidence "tending to prove that the mileage formula will yield a grossly distorted result" in this particular case. *See ibid.* Plaintiffs' evidence in opposition to the Director's summary judgment motion was sufficient to raise a fact

issue as to whether the formula as applied results in a tax of plaintiffs' income that is not rationally related to the income they generate in this State.

The statistics used by the Director to arrive at the apportionment allocation were derived from the annual reports plaintiffs submitted to the STB and the State. The Director accepted the figures plaintiffs submitted to the governmental agencies as correct. The State has not challenged those statistics either. Those statistics included plaintiffs' use of ton-miles as a measure of their income attributable to their New Jersey operations. Though the trial judge correctly concluded that the Director was not required to use ton-miles as the basis to calculate plaintiffs' New Jersey derived income because the mileage-based formula was valid on its face, plaintiffs' earnings based on ton-miles are not irrelevant. They are evidence that plaintiffs' incomes attributable to their New Jersey operations are substantially lower than the incomes the Director attributed to plaintiffs' New Jersey operations through the use of his track-miles formula. For example, for the tax years in question, using ton-miles as a gauge, the average percentage of Norfolk Southern's income attributable to its New Jersey operations is approximately .5 percent, while using the Director's track-miles based formula, the average percentage of income attributable to New Jersey is approximately 3.7 percent. That means, for instance, that for the tax year 2000, the Director's formula resulted in a tax of roughly $1,600,000, compared to $227,700 in taxes using Norfolk Southern's computations. CSX's calculations show generally similar results.

The revenues based on the ton-miles formula are therefore prima facie evidence of a gross discrepancy between the Director's calculations and the railroads' calculations of the amount of business the railroads transacted in this State. In other words, even though the Director's track-mile based formula is constitutional on its face, by coming forward with the ton-mile based formula, the railroads provided "strong evidence tending to prove that the mileage formula will yield a grossly distorted result" in this particular case. *Norfolk, supra,* 390 *U.S.* at 329, 88 *S.Ct.* at 1003,

19 *L.Ed.*2d at 1210. Plaintiffs have demonstrated that summary judgment in favor of the Director was not warranted because, under the circumstances, the Director's use of track-miles may have resulted in an apportionment "which, albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within [this] jurisdiction." *Hans Rees' Sons, supra,* 283 *U.S.* at 134, 51 *S.Ct.* at 389, 75 *L.Ed.* at 906; *see also Tyler Pipe Indus. v. Wash. Dep't of Revenue,* 483 *U.S.* 232, 247, 107 *S.Ct.* 2810, 2820, 97 *L.Ed.*2d 199, 213–14 (1987) (" 'tax that unfairly apportions income from other States is a form of discrimination against interstate commerce' ") (quoting *Armco, Inc. v. Hardesty,* 467 *U.S.* 638, 644, 104 *S.Ct.* 2620, 2624, 81 *L.Ed.*2d 540, 547 (1984)).

If there is a genuine issue as to any material fact, summary judgment must be denied. *R.* 4:46–2(c). Here, the affidavits of plaintiffs' officers detailing the bases for plaintiffs' calculations, as well as the unchallenged statistical evidence plaintiffs presented concerning their income both in New Jersey and elsewhere for the challenged tax years, raise genuine factual disputes as to the income attributable to plaintiffs' New Jersey railroad operations. Plaintiffs have made a sufficient showing to require a hearing to determine if the Director's methodology grossly distorts their earnings attributable to their New Jersey operations. Accordingly, we reverse the Tax Court decision affirming the tax assessments for the challenged tax years, and remand for further proceedings consistent with this opinion.

## VII

That takes us to the final issue on appeal, CSX's challenge to the 4–R Act. It claims the ten percent annual RFT rate imposed by *N.J.S.A.* 54:29A–13 and *N.J.A.C.* 18:23–4.1 discriminates against railroads in violation of 49 *U.S.C.A.* § 11501 because the ten percent tax rate exceeds the nine percent corporate business tax rate imposed on other corporations in this State. We agree with the Tax Court that this allegation is without merit and affirm substantially for the reasons expressed by the Tax Court judge in

his written opinion. *CSX, supra,* 22 *N.J. Tax* at 420–21. Plaintiffs' arguments on this issue are without sufficient merit to warrant additional discussion in a written opinion. *R.* 2:11-3(e)(1)(A), (E). We add only the following.

We agree with the Tax Court that states need not exact the same percentage of tax on railroads as they do on other corporations; states merely need to ensure that "the tax they do impose on railroads is not discriminatory." *CSX, supra,* 22 *N.J. Tax* at 420. We also agree that the proofs CSX has submitted on this issue are not sufficient to survive a summary judgment motion. CSX has not made a prima facie showing that New Jersey's ten percent tax rate on railroads results in a discriminatory tax on railroad operations in New Jersey. The computations for each tax are different and CSX simply has not demonstrated that the 4–R tax has a discriminatory impact.

Affirmed in part, reversed in part, and remanded.